STUCKEY *v.* LOCKARD.

Opinion delivered July 13, 1908.

1. APPEAL—FAILURE TO BRING UP EVIDENCE—Where a decree in chancery was heard upon oral testimony which is not preserved in the judgment record nor by bill of exceptions, and there is no contention that the complaint fails to state a cause of action or that the decree is beyond the issues, it will be presumed that the oral testimony sustained the decree. (Page 237.)

2. TRUST—ADMINISTRATRIX BUYING AT HER OWN SALE—LACHES.—Where an administratrix purchased at her own sale, such purchase is voidable merely; and where the heirs, knowing the facts, permitted her to go into possession under the sale, and waited four years before seeking to enforce a trust, and until the land has come into hands of a purchaser for value, they will be held to be barred by laches. (Page 237.)

3. APPEAL AND ERROR—REHEARING—NEW QUESTION.—Where the defense of laches was pleaded in defendant's answer and relied upon in his brief on appeal, a suggestion that one of the plaintiffs was a minor and not affected by laches, made on rehearing for first time after judgment for plaintiffs was reversed, will not be considered. (Page 240.)

· Appeals from Jackson Chancery Court: *George T. Humphries,* Chancellor; case No. 135 reversed.; case No. 143 affirmed.

Separate appeals were taken in these cases, but they have been abstracted and briefed and considered together. No. 135 is for the recovery by the heirs at law of Adam Bach of lot 3, block 30, Davis' Addition to the city of Newport, which had been sold to Geo. K. Stephens as hereinafter explained. No. 143 is for the recovery by the said heirs of lot 2, same block, which had been sold to Lynn Turley. The appellee's counsel thus state the case:

"These suits were brought by the heirs at law of Adam Bach, deceased, to set aside an administratrix's sale of lots two and three in block thirty of Davis's addition to the city of Newport, in Jackson County, Arkansas, on the ground that the administratrix purchased the lots at her own sale through her agent, S. M. Stuckey. The complaints alleged that S. M. Stuckey, acting for the administratrix, bid in lot number two for $395, and lot number three for $307.50; that no deed was executed or delivered by the administratrix to Stuckey; that two days after the sale Stuckey conveyed both lots to the administratrix by deeds reciting the exact consideration bid by Stuckey; that Stuckey was a mere conduit for the title from Lalla R. Bach, as administratrix, to her individually; and that no consideration actually passed between the administratrix and Stuckey, nor was any consideration intended to be passed. The answers admit the administratrix's sale; admit that no money was paid by Stuckey to the administratrix; allege that no consideration was paid because Stuckey sold the lots to the administratrix for the exact amount bid by him before the purchase price became due; and allege improvements, and that the administratrix had paid off a mortgage on the lots for which reimbursement was claimed. The answers also allege that Stephens and Turley were innocent purchasers for value without notice.

"Adam Bach died on the 7th of October, 1899, seized and possessed of a considerable estate, consisting of real and personal property. He left a widow, Lalla R. Bach, an infant child, who soon after died, and several brothers and sisters, who are the plaintiffs in these suits. On the 18th of October, 1899, Lalla R. Bach was appointed and qualified as administratrix of his estate.

On the petition of Mrs. Bach the homestead was set apart to her, and commissioners were appointed to assign her dower. The commissioners reported that the real property belonging to the estate had a total valuation of $10,170; that there was a mortgage on lots two and three in block 30, Newport, Arkansas, amounting to $2,413.65; that the net value of the real property after deducting the mortgage debt was $7,756.35; and that the value of the dower interest, being one-third of the net value of the real property, was $2,585.45. The commissioners further reported that the value of lots two and three in block 30 was $5,000; that the incumbrances on them was $2,413.65; and that the net value of the lots was $2,586.35. As the estimated value of the dower interest was $2,585.45, and the net value of lots two and three was $2,586.35, the commissioners set aside lots two and three to the widow for her dower, subject, of course, to the incumbrance which she would have to discharge. * * * * * *

"Subsequently the administratrix filed a petition in the probate court praying for an order to sell the real property belonging to the estate for the payment of debts. The petition described the real property and included the reversionary interest in lots 2 and 3 in block 30, in which a life estate had been vested in the widow as her dower. * * * * * *

"On the 8th day of May, 1901, the court granted the petition and made an order of sale. This order describes specifically each piece of real property, and the lots in controversy were described as 'the reversionary interest in lots two and three in block thirty in Davis's addition to the city of Newport.'

"On the 22d day of October, 1901, the administratrix filed a report of the sale reciting, among other sales, as follows: 'The reversionary interest in lot 2, block 30, Davis's Addition, Newport, to S. M. Stuckey, $395.00; the reversionary interest in lot 3, block 30, Davis's Addition to the city of Newport, to S. M. Stuckey, for $307.50.'

"On the same day, October 22d, 1901, the sale was approved and confirmed. On the same day the administratrix signed and acknowledged a deed from herself as administratrix to S. M. Stuckey, purporting to convey to him the reversionary interest in lot number 2 for $395.00, and the reversionary interest in lot number 3 for $307.50. While this deed bears date the 22d of

October, 1901, it was not filed for record until August 24, 1905, and the proof shows that the deed was never in fact delivered to S. M. Stuckey. It was filed for record long after the death of Lalla R. Bach, the administratrix.

"On the 24th day of October, 1901, S. M. Stuckey conveyed to Lalla R. Bach lots 2 and 3 by a deed which recites a consideration of $702.50. This is the sum of $395.00 bid by Stuckey for lot No. 2 and $307.50 bid by Stuckey for lot No. 3.

"Lalla R. Bach afterwards intermarried with W. L. McGee. Upon her death she devised all of her property, including lots 2 and 3, to W. L. McGee. On the 1st of September, 1905, McGee conveyed lot No. 3 to George K. Stephens, who is the defendant in case No. 135, for $2,200. The deed recites that $500 was paid in cash, and that the balance of $1,700 was evidenced by a note due November 1, 1906.

"On the 7th day of September, 1905, McGee conveyed lot No. 2 to Lynn Turley, the defendant in case No. 143, for $2,300. The deed recites that $500 was paid in cash, and that the balance of $1,800 was evidenced by a note due November 1, 1906. Each deed retained a lien for the unpaid purchase money.

"The complaint alleges that the administratrix, acting through her agent, S. M. Stuckey, purchased the two lots in controversy at the administratrix's sale. It is admitted that Stuckey bid in the lots, and that he afterwards conveyed them to Mrs. Bach. It is also admitted that Stuckey paid nothing on his bid. He attempts to explain this by saying that he sold to Mrs. Bach at the same price at which he purchased and before his purchase money became due."

For the purposes of the decision it is not material to review the evidence. The findings of the court will be accepted as correct.

In the Stephens case the court found "that within a short time after said sale the said S. M. Stuckey entered into a contract to sell and convey the said reversionary interest so purchased by him to the administratrix, Lalla R. Bach, which contract was made before the confirmation of said sale, on the 22d day of October, 1901; that said contract was carried out by the execution of a deed from the said S. M. Stuckey to the said Lalla R. Bach on the 24th day of October, 1901, conveying said rever-

sionary interest to her; that the legal effect of said contract was to render the said administratrix a purchaser of said reversionary interest at her own sale; that the defendant Geo. K. Stephens purchased the said lot three with full knowledge of the facts avoiding said administratrix's sale"; and gave judgment for the recovery of the property, and appointed a commissioner to state an account between the plaintiffs and the defendant Stephens.

In the Turley case the court made a similar finding. In the decree in the Turley case, which was tried at a term subsequent to the trial of the Stephens case, the record recites that it came on to be heard on the pleadings, which were mentioned, "and the depositions of S. M. Stuckey, C. R. Hite, Geo. K. Stephens, W. L. McGee and Lynn Turley and M. B. Brewer, the oral testimony of M. M. Stuckey, S. M. Stuckey, J. W. Phillips, C. M. Erwin and Geo. K. Stephens, the abstract of title, the indemnifying bond referred to in the deposition of Geo. K. Stephens," etc. In other respects the decree in the Turley case was similar to that in the Stephens case. The defendants in each case appealed.

*Stuckey & Stuckey* and *Joseph W. Phillips,* for appellants.

1. There is no evidence of any agreement or understanding whatever between the administratrix and S. M. Stuckey. The property was burdened by a life estate, and was heavily incumbered, as the Bach heirs knew. The amount bid was all that the reversionary interest was supposed to be worth. The heirs remained mute, although they had every opportunity to object both to the sale and to the confirmation thereof. The sale was for a fair consideration, was confirmed, and Stuckey executed no deed to Mrs. Bach until after the confirmation. An administrator is not precluded from ordinary business transactions with others touching property bought at a sale which he has conducted, if there was no express or implied understanding at the time of the sale that the administrator should share in the benefit. 33 Ark. 576; 11 Am. & Eng. Enc. of L. 2d Ed. 1022.

2. Under the facts and circumstances shown in evidence, the delay to bring suit in this case was unreasonable, and appellees are barred by their own laches in not objecting to the sale

until after the death of Mrs. Bach, and in delaying their suit until after the purchase by Turley and Stephens. 55 Ark. 92.

3. Turley and Stephens were authorized to go by the record of deeds of Jackson County, and are innocent purchasers.

*Murphy, Coleman & Lewis,* for appellees.

1. Because of appellants' insufficient abstract of the evidence, the decrees should be affirmed.

2. The sale is voidable at the instance of the heirs. It is immaterial whether Stuckey was the agent of the administratrix at the time he purchased, or not. It is admitted that within two days after he purchased he made a contract to convey the lots to her at the same price. An administrator's sale is incomplete until confirmed, and a purchase by the administrator from the vendee before confirmation is within the prohibition against purchasing at his own sale. 58 Ark. 84; 48 Ark. 250; 55 Ark. 92; 46 Ark. 32; 11 Am. & Eng. Enc. of L. 2d Ed. 1148; Kirby's Dig. § 192.

3. Turley and Stephens are shown to have known about the claim of appellees and to have freely discussed it with various parties. They cannot claim as innocent purchasers. Moreover, to constitute one an innocent purchaser, he must have purchased without notice, and have paid the consideration. In these cases less than one-fourth the consideration was paid in cash, and the balance was still unpaid when suit was brought. 44 Ark. 48; 29 Ark. 568.

HILL, C. J., (after stating the facts). 1. So far as the appeal in case No. 143, designated in the statement of facts as the Turley case, is concerned, the decree must be affirmed because it shows that the case was heard upon certain testimony which is preserved in the record and the oral testimony of various witnesses which is not made part of the record. There is no bill of exceptions preserving the oral testimony, and the presumption is that the oral testimony would sustain the decree. It is not contended that the complaint does not state a cause of action or that the decree is beyond the issues. This subject is discussed in the case of *Rowe* v. *Allison, ante* p. 206.

Decree affirmed.

2. So far as No. 135, the Stephens case, is concerned, the record is complete, and enables the court to dispose of it upon its merits. If it be conceded that the testimony adduced sup-

ports the allegations that Stuckey was a mere conduit through which the title passed from Mrs. Bach, as administratrix, to Mrs. Bach, individually—a point argued at some length—yet plaintiffs' (appellees') evidence lacks an essential element to enable them to recover in a court of equity. In the case of *Crawford County Bank* v. *Bolton, ante* p. 142, the authorities are reviewed and the principle declared that the purchase by an administrator at his own sale is voidable and not void. The sale of the property was confirmed on the 22d day of October, 1901, and a deed from Stuckey to the administratrix made on the 24th of October, 1901. Thereafter the administratrix married, and afterwards died, leaving a will in which she devised the property to her second husband, and he sold the same for value to Stephens on the 7th day of September, 1905.

Although the court found that Stephens had knowledge of the claim of the Bach heirs, still it is an undisputed fact that he was a purchaser for value, and went into possession under his purchase. This suit was brought on the 25th of October, 1905.

In addition to the facts stated in the statement of facts, Mr. Stuckey's testimony is undisputed that Mrs. Bach, through her attorney, bid on both the lots at the administrator's sale, and one of them was struck off to her, but her bid was withdrawn, and Stuckey's bid then was accepted. It is also established that the purchase price was paid by the administratrix, and was used to pay the debts of the estate. It is evident that the heirs of Bach knew from the time of the sale of the purchase by Stuckey, and immediately thereafter they had knowledge, or means of knowledge, that he conveyed to the administratrix, and that the money was paid into the estate. All the facts that have been brought into evidence in this case were known to them at that time, or by reasonable diligence could have been known to them.

Chief Justice ENGLISH, for this court, said: "But where the statute is not relied on as a defense, or where there is no statute of limitation, a court of equity will not aid in enforcing stale demands, where the party had been guilty of negligence, and slept upon his rights. The chancellor refuses to interfere after an unreasonable lapse of time from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscured by time, and the evidence may be lost. [Citing authorities.] No precise rule,

applicable to all cases, as to what lapse of time will constitute a demand a stale one, in the sense above indicated, can be declared. Each case must, to some extent, depend on its own circumstances, and will be construed or modified by them, and by analogy to other known and settled rules of law." *Wilson* v. *Anthony,* 19 Ark. 16. See also *Cook* v. *Martin,* 75 Ark. 40.

To come to the precise point of this case, the principle controlling it is thus stated: "It follows that interested persons are not confined to the remedy of avoiding the sale, but have the right to elect whether they will have the sale set aside or ratify it and hold the representative as trustee for the value or price. The right to have the sale set aside must be exercised within a reasonable time after the irregular purchase has become known to the person seeking its avoidance, as acquiescence in the sale for a long time will create a presumption of ratification." 18 Cyc. 772.

Mr. Justice Scholfield for the Illinois court said: "Numerous cases have been decided by this court where delay for a much less period than that fixed by the statute of limitations has been held to preclude the right of the party to bring the suit. In such cases, it is said, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, the prosecution of the suit; and no general rule can be laid down for the guide of the court in every case." *Williams* v. *Rhodes,* 81 Ill. 571. And in that case a delay of five years and one month was held unreasonable.

In the recent case of *Brinkerhoff* v. *Brinkerhoff,* 80 N. E. (Ill.) 1056, where the facts are strikingly similar to those at bar, and the delay about the same as in this case, the court said: "Moreover, the sale was voidable, and while laches from delay cannot arise until knowledge has been acquired by those who are charged with it, and a party is not held to the same diligence to discover fraud where the person charged therewith is in the relation of trust and confidence which requires him to disclose the truth to the other, yet it is plain that appellants, from the day of the sale, knew that Taylor had advanced money for the loan. There is nothing to show that there was any diligence, until after his death, to find out as to his actual interest in the land. Henry Brinkerhoff remained in open, notorious posses-

sion, controlling and managing the land, from the time of the sale. So far as this record discloses, Taylor Brinkerhoff never claimed that he had any interest in it of any kind or nature. His brothers and sisters never asked him what his interest was. There is no reason to suppose, from his talk with them as to advancing the money, that he would have concealed the actual state of affairs, had inquiry been made."

So in this case there is absolutely no fact now ‧brought to the court that could not have been brought to the court the day after the deed of Stuckey to Mrs. Bach was executed. In the meantime, the property passed into the hands of Mrs. Bach during her lifetime, and to her second husband as her devisee, and finally into the hands of third parties before· action was taken—and the time which has elapsed is over four years. The court holds the time is unreasonable in view of the situation of all the parties and the changing circumstances, and that this lapse of time has indicated an acquiescence in the receipt of the purchase money by the estate, and that it is too late now to order its restitution and in lieu thereof the recovery of the property by the heirs.

The judgment is reversed, and the cause remanded with directions to dismiss the complaint.

### ON REHEARING.

Opinion delivered September 21, 1908.

HILL, C. J. Appellee asks for a rehearing, and the first matter presented is a consideration of the facts constituting laches. The court has carefully considered the argument made, and it fails to carry conviction.

In addition to this argument, it is said that one of the plaintiffs was a minor when the transaction occurred, and is still a minor. It is argued that a minor is not to be deprived of his inheritance on the ground of laches, and authorities are cited to that effect. Counsel say: "As the court does not allude to his minority in the opinion, we are convinced that in the stress of the adjourning hours the court overlooked it." A reexamination

of the abstracts and briefs shows that counsel on both sides over-looked this fact, if it is a fact. It is not mentioned in either the abstracts or the briefs, nor is it mentioned in the transcript other than in the style of the complaint, which contains the names of all of the plaintiffs, including "Peter Bach, minor, by his next friend, Elizabeth Lockard," but there is neither allegation nor evidence that Peter Bach is a minor.

Laches was pleaded in the answer and argued at length in the brief for appellants, and the first time that it is claimed that one of the parties is a minor and unaffected by laches is in the motion for rehearing.

The motion for rehearing is denied.