## MAYNARD *v.* HENDERSON.

Opinion delivered February 8, 1915.

1. CLOUD ON TITLE—DEED—INJUNCTION.—Equity will interpose to prevent the execution of a deed which it would cancel as a cloud if it were executed.

2. DEEDS—GRANT TO M. AND "TO HER NATURAL HEIRS."—A grantor deeded lands to M. "and to her natural heirs." M. died leaving a husband and son surviving. *Held,* the term "natural heirs" meant "heirs of the body," and that the land descended to M.'s son.

3. ESTATE TAIL—PASSES, HOW.—Under Kirby's Digest, § 735, a common law fee tail is turned into a life estate in the first taker and passes in fee simple to the person to whom the estate would first pass from that person according to the course of the common law.

4. ESTATE TAIL—CONSTRUCTION OF DEED.—Property was deeded to M. and the heirs of her body. M. died, leaving a husband and son surviving. *Held,* the deed gave to M. a fee tail estate, which, under the statute, is an estate for life, with remainder in fee to her son, and the husband took no interest whatever in the land.

Appeal from Randolph Chancery Court; *George T. Humphries,* Chancellor; reversed.

*S. A. D. Eaton,* for appellant.

1. If the granting clause in the deed had contained the words "bodily heirs," or "heirs of her body," there would be no question but that the deed conveyed to Nevada P. Maynard a life estate only, with remainder in fee to appellant, and that her husband surviving would have no curtesy right in the lands. Kirby's Dig., § 735; 44 Ark. 458.

The words, "natural heirs," as used in the deed are of the same legal import and effect as the words "bodily heirs," or "heirs of her body." 13 Cyc. 605; *Id.* 659,

*et seq.;* Kirby's Dig., § 1343; 31 N. E. 1047; 48 Am. Dec. 146; 15 Hun (N. Y.) 410; 78 N. C. 372; 21 Cyc. 430; 23 Ark. 378-387.

2. If the sheriff's deed would create a cloud upon appellant's title, he has the right to maintain this suit. It meets the test. 37 Ark. 315; 2 Words & Phrases, 1233; 7 Cyc. 255. See, also, Kirby's Dig., § 649.

*A. J. Witt,* for appellees.

1. The demurrer was properly sustained. Only the interest of L. F. Maynard was sold. If he had none, how could a sale of his interest create a cloud on the title of his minor son?

A cloud on title is a title or incumbrance apparently valid, but, in fact, invalid; something which shows *prima facie* some right of a third person to it, etc. See 2 Words & Phrases, 1233, and cases cited.

Victor P. Maynard's rights can be adjudicated if appellees get a deed and sue for possession; but L. F. Maynard ought not to be permitted, in his minor son's name to have adjudicated the question as to whether or not he, the father, has title, and thereby settle whether he should redeem or not.

2. If this is to be treated as an action to reform the deed to Nevada P. Maynard, no cause of action is stated. 59 Ark. 187; 95 Me. 265; 21 Utah, 192; 34 Cyc. 967.

3. The deed as made gives L. F. Maynard a curtesy interest in the land. The words, "natural heirs," are equivalent to "heirs generally," and not "heirs of her body." Black, Law Dict., 801.

SMITH, J. Appellant, L. F. Maynard, sued as next friend for his infant son, and stated the following facts as constituting his cause of action. That on July 19, 1897, one Eli Abbott conveyed to his daughter, Nevada P. Maynard, a tract of land situated in Randolph County, Arkansas, comprising 440 acres. That said lands were granted to said Nevada P. Maynard and "to her natural heirs," and the consideration therefor was the love and affection of the father for his daughter. That on December 1, 1897, the said Nevada P. Maynard died intestate,

leaving her surviving her husband and the said Victor P. Maynard, her only child and natural heir. That while the deed recited a consideration of $5,000, there was in fact no consideration, except love and affection, and that the term, "natural heirs," used in said deed was intended and understood by both grantor and grantee to mean heirs of her body, and was so expressed at and before the time of the execution of said deed by said grantor. That on July 22, 1913, judgments were rendered in the Randolph circuit court against L. F. Maynard in his individual capacity, and an execution later issued against him, and was levied upon his curtesy interest in the lands above referred to, and on April 4, 1914, the sheriff of that county sold said interest to appellees and executed a cer-tificate of purchase, and, upon the expiration of the period of redemption, will make a deed therefor, which will constitute a cloud on the title of said infant. A demurrer to this complaint was sustained, and, appellant declining to amend, the complaint was dismissed, and this appeal has been duly prosecuted.

The question in the case is whether L. F. Maynard had curtesy in these lands, and that question is decided by a determination of the construction to be given the deed to Nevada P. Maynard.

(1) Equity will interpose to prevent the execution of a deed, which it would cancel as a cloud, if it were exe-cuted. 5 R. C. L. 663. *Talieferro* v. *Barnett,* 37 Ark. 517. And the execution of a deed by the sheriff would consti-tute a cloud on the infant's title. *White Sewing Machine Co.* v. *Wooster,* 66 Ark. 382.

This sheriff's deed will not only purport to convey an interest in these lands, but will actually convey an in-terest, if the term, "natural heirs," is to be given the meaning contended for by appellee.

In the case of *Johnson* v. *Knights of Honor,* 53 Ark. 259, it was held that the word "heirs," when used in any legal instrument, with no context to explain it, should be understood in its legal and technical sense. There is nothing in the context of the deed under consideration to

indicate the term, "natural heirs," was not used in its legal and technical sense. This conveyance was not to the daughter and her heirs general, but to her and her "natural heirs," and as we can not assume this word "natural" was surplusage, we must give it its technical meaning, whatever that may be, when thus used.

Bouvier's Dictionary gives the following definition of natural heirs: "As used in a will and by way of executory devise, they are considered as of the same legal import as 'heirs of the body.' "

The definition given in Anderson's Dictionary is "Heir of the body or natural heir. An heir begotten of the body, a lineal descendant."

Black's Law Dictionary, however, defines the term as follows: "Heirs by consanguinity as distinguished from heirs by adoption, and also as distinguished from collateral heirs."

Four cases are cited in support of the definition given in Black's Law Dictionary as follows: *Smith* v. *Pendell,* 19 Conn. 107; *Markover* v. *Krauss,* 31 N. E. 1047; *Miller* v. *Churchill,* 78 N. C. 372; *Ludlum* v. *Otis,* 15 Hun 410.

The case of *Ludlum* v. *Otis,* involved the construction of the will of a testator who left no descendants. The syllabus in that case is as follows: "The testator left him surviving a mother, a sister and cousins, but no widow or children. *Held,* that by the term, his 'natural heirs,' the testator meant his mother and sister."

We quote the following language from the opinion in that case: "Who were his natural heirs? We should say to a man reared and educated in New York the term, 'natural heirs,' would be understood and regarded as a mother and sister, rather than cousins in any degree. * * * It results from these views that the devise of New York property is to his mother and sister as his natural heirs, or that the devises are so indefinite as to invalidate it as a devise to any one, and in that case the property descends to the mother and sister, and, after the death of the mother, to the sister alone."

The North Carolina case cited above supports the definition given by Bouvier and Anderson. The syllabus in that case is as follows: "Where a testatrix bequeathed a certain sum to each of two sisters, M. and N., and, 'in the event of the death of either without natural heirs,' the amount I have bequeathed shall go to the survivor.' *Held,* that the words, 'natural heirs,' mean children or issue, and, upon the death of M., the bequest to her goes to N."

The case of *Markover* v. *Krauss* involved the construction of a statute of the State of Indiana relating to the adoption of children.

The New York case and the North Carolina case referred to above construe the wills of testators who used the term, "natural heirs," but there were no children or descendants of children to whom that term could be applied in either of those cases. The remaining case cited in support of Black's definition is the case of *Smith* v. *Pendell,* 19 Conn. 107, in which case the testator devised his lands to his granddaughter in the following terms:

"And to my beloved granddaughter, Elizabeth Smith, I do give all the remainder of my lands and estate, hoping that she may live to enjoy the same, but if the said Elizabeth Smith should die leaving no natural heirs, my will is that the same shall go to my said daughter-in-law, Hannah Smith, mother of the said Elizabeth, and to be her own."

In construing this will that court said: "The words, 'natural heirs,' and 'heirs of the body,' in a will and by way of executory devise, are considered as of the same legal import. The cases are very numerous which confirm this construction, many of which are referred to in the case last cited (*Hudson* v. *Wadsworth,* 8 Conn. 348.)."

(2) While the subject is not free from doubt, we think the term, "natural heirs," is not to be construed as meaning heirs general. To so construe the term would be to treat the word "natural" as surplusage; and we think the definition given in Bouvier's and Anderson's

dictionaries is to be preferred to the one given in Black's Dictionary, in so far as those definitions differ.

(3) Having reached the conclusion that the term, "natural heirs," does not mean heirs general, we find the remaining questions involved in this case have already been decided by this court. By statute, a common law fee tail is turned into a life estate in the first taker, and passes in fee simple to the person to whom the estate would first pass from that person according to the course of the common law. Kirby's Digest, § 735; *Wheelock* v. *Simons,* 75 Ark. 21.

In the case of *Wilmans* v. *Robinson,* 67 Ark. 517, it was decided (to quote the syllabus) :

"A deed of conveyance to the grantee and her bodily heirs creates a fee tail at common law, whereby, under the statute, the grantee takes an estate for her natural life, with remainder in fee in her children."

The opinion in that case quoted from Kerr on Real Property, section 496, as follows: "The rule in Shelley's case * * * is a rule of construction, and not of law; simply providing that where an estate of freehold is limited to a person, and the same instrument contains a limitation, either mediate or immediate to his heirs, or the heirs of his body, the word 'heirs' is a word of limitation; that is, the ancestor takes the whole estate comprised in the term. If the limitation be to the heirs 'of his body,' he takes a fee-tail. If to his heirs generally, he takes a fee simple."

(4) It follows, therefore, that Nevada P. Maynard took an estate for life, with remainder in fee to the infant who sues here by his next friend, and, therefore, L. F. Maynard has no curtesy interest in the lands sold under the execution, and the decree of the court below will, therefore, be reversed and the cause will be remanded with directions to overrule the demurrer and for further proceedings not inconsistent with this opinion.