BRADLEY LUMBER COMPANY OF ARKANSAS
*v.* BURBRIDGE.

4-8309 - 4-8310                                    210 S. W. 2d 284

Opinion delivered March 29, 1948.

Rehearing denied April 26, 1948.

166

4-8309

*Williamson & Williamson*, for appellant.

· *U. A. Gentry, DuVal L. Purkins* and *Shields M. Goodwin*, for appellee.

4-8310

*Williamson & Williamson*, for appellant.

*U. A. Gentry, DuVal L. Purkins* and *Shields M. Goodwin*, for appellee.

Robins, J.   These two appeals were lodged here separately.

In case No. 8309 the appeal comes from a decree of the chancery court, rendered on December 23, 1946, in three different suits (consolidated for trial in the lower court) filed in that court by appellee, L. J. Burbridge, to recover damage for cutting of timber on 320 acres. In one of these cases the lower court denied recovery to appellee, another was dismissed on stipulation, and in the other case the court found that appellee was entitled to damages, but allowed him only one-half of the value of the timber removed because, as the court held, he owned only a half interest in the land.

In No. 8310 appeal is from a judgment of the circuit court, rendered on May 19, 1947, in an ejectment suit instituted by appellee to establish his title and to recover possession of the same tract as that involved in the chancery cases. The circuit court, treating the previous decree in the chancery cases as *res judicata,* held that appellee should recover only a one-half interest in the land.

Inasmuch as the basic question in all these cases is the same—the ownership of the land—we have consolidated the two appeals for determination by single opinion.

Solution of these questions is necessary to a determination of all the issues involved:

I. Question of ownership of the land under the deed executed by J. H. D. Scobey and wife.

II. Question of efficacy of appellant's plea of limitation against appellee's claim of ownership.

III. Question of effect of the quitclaim deed executed by Nettie Burbridge Wells to appellee.

IV. Question of jurisdiction of the circuit court in the ejectment suit.

V. Question of appellee's right to recover for timber cut from the land.

I.

Both parties to this litigation claim through a common source of title.

It is stipulated that appellee's maternal grandfather, J. H. D. Scobey, owned this land on June 4, 1869, and that on that day Scobey and his wife executed a deed, conveying same, and other lands, to his daughter, Isabella J. Burbridge "and the issue of her body, by J. R. S. Burbridge begotten, forever and in fee." The meaning and effect of the quoted language is one of the disputed issues herein. At the time this deed was executed J. R. S. Burbridge and his wife, Isabella, had one child, the appellee, who was 18 days old. They had five children in all, but three of them died without issue, and only two

of them, appellee and his sister, Nettie Burbridge Wells, survived their mother.

J. R. S. Burbridge died in 1885, and his widow, Isabella, never remarried. She died on May 7, 1932, at the age of 93. Isabella J. Burbridge, on September 16, 1891, conveyed the lands in dispute to J. F. Ritchie, through whom appellant deraigns its title. Her deed to Ritchie contained no limitation, but purported to convey the entire estate.

It is urged by appellant that the effect of the deed executed by Scobey in 1869 was to vest in Isabella J. Burbridge and appellee an estate of tenancy in common, with the estate opening up on the birth of each succeeding child to Isabella J. Burbridge so as to permit each such child to take an equal estate as tenant in common. And, argues appellant, since appellee was a tenant in common, instead of a remainderman, the running of the statute of limitations had therefore been started against him much more than seven years before the beginning of any of these suits by appellee.

While the exact language used in the conveyance by J. H. D. Scobey and his wife has not been construed by this court, we have, in many cases, had to determine the meaning of substantially the same wording in deeds.

In the case of *Horsley, et al.,* v. *Hilburn, et al.,* 44 Ark. 458, decided in 1884, this court held that under the common law in force in this state, as modified by the Act of 1837 (Pope's Digest, § 1799), a deed executed by Jesse Shelton to his daughter, Marietta Hilburn, and "the heirs of her body that now are or may hereafter be born" vested a life estate in Mrs. Hilburn and upon her death the remainder in fee in her children that survived her and the issue of such as had died during her life *per stirpes.*

The decision in *Horsley* v. *Hilburn, supra,* has never been overruled, but has been followed by us in many cases. See *Watson* v. *Wolff-Goldman Realty Company,* 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; *Dempsey* v. *Davis,* 98 Ark. 570, 136 S. W. 975; *Maynard* v. *Hender-*

*son,* 117 Ark. 24, 173 S. W. 831, Ann. Cas. 1917A, 1157; *Pletner* v. *Southern Lumber Company,* 173 Ark. 277, 292 S. W. 370.

In the recent case of *Wilkins* v. *Wilkins,* 212 Ark. 242, 206 S. W. 2d 26, we had to deal with a contention somewhat similar to that urged by appellant here. In that case it appeared that Wilkins and wife executed a deed conveying certain land to their son "and unto his children and assigns forever." It was urged that under this deed the son and his children were vested with title as tenants in common. We rejected this contention and held that the deed created a life estate in the son with remainder in fee simple in the children.

We conclude that the chancery court correctly held that the deed executed by J. H. D. Scobey and wife in 1869 vested in Isabella J. Burbridge a life estate, with remainder in fee simple being vested in such issue of her body begotten by J. R. S. Burbridge as should survive her.

## II.

The lands involved herein are wild and unenclosed, and have never been in the actual possession of any of the parties. It is stipulated that each year since the conveyance of same in 1891 by Isabella J. Burbridge to J. F. Ritchie, through whom appellant deraigns its title, appellant and its predecessors in title have paid the taxes accruing against this property until after the institution of all the litigation herein.

Appellant argues that under § 8920, Pope's Digest, this wild and unenclosed land has been in the constructive possession of appellant and those through whom it claims title for more than seven years before the institution of any of the actions brought by appellee, and that therefore these actions were barred by the statute of limitations.

It was the duty of appellant and its grantors, who had, through the deed of Isabella J. Burbridge to J. F. Ritchie, become the owner of an estate in these lands for the life of Isabella J. Burbridge, to pay the taxes accruing against the lands during Mrs. Burbridge's lifetime. A

failure on their part so to do would have resulted in a forfeiture of this life estate to the ones next entitled to take. Section 13813, Pope's Digest.

But, assuming that under the provisions of § 8920, Pope's Digest, the possession of this land has been in appellant and its grantors, such possession was not adverse to appellee and the other remaindermen. No principle of law is better established than that the possession of one claiming under a life tenant is not adverse to the remainderman until the death of the life tenant. *Moore* v. *Childress,* 58 Ark. 510, 25 S. W. 833; *Hayden* v. *Hill,* 128 Ark. 342, 194 S. W. 19; *Ousler* v. *Robinson,* 72 Ark. 339, 80 S. W. 227; *Gallagher* v. *Johnson,* 65 Ark. 90, 44 S. W. 1041; *Morrow* v. *James,* 69 Ark. 539, 64 S. W. 269; *Ogden* v. *Ogden,* 60 Ark. 70, 28 S. W. 796, 46 Am. St. Rep. 151; *Strickland* v. *Moore,* 98 Ark. 30, 135 S. W. 360; *LeSieur* v. *Spikes,* 117 Ark. 366, 175 S. W. 413; *Smith* v. *Maberry,* 148 Ark. 216, 229 S. W. 718; *Hamilton* v. *Farmer,* 173 Ark. 341, 292 S. W. 683.

Nor did the attempted conveyance by Isabella J. Burbridge of the entire estate to J. F. Ritchie work a forfeiture of the life estate or start the statute of limitations to running against appellee. *Smith* v. *Maberry, supra.*

Since appellee's ejectment suit was instituted less than seven years after the death of his mother, it was not barred by limitations.

### III.

The chancery court sustained appellant's contention that the deed executed by Nettie Burbridge Wells, the only child (other than appellee) of Isabella J. Burbridge, who did not die before the death of Isabella J. Burbridge, to her brother, appellee, was ineffective to convey any title whatever. This deed, which was executed on May 21, 1913, was a quitclaim deed, but it recited a consideration of $500 paid by appellee to Mrs. Wells, and by its express language it purported to convey to appellee all interests, "present and prospective" of the grantor in these lands. So far as the record discloses, Mrs. Wells

has never attempted to invalidate this deed, nor has she asserted that all her share in the land was not conveyed to her brother by this deed.

The chancery court based its ruling as to this deed on the fact that, since the deed was a quitclaim one, it did not under our decisions, operate to carry after acquired title, and that, since Nettie Burbridge Wells, when she executed the deed, had no present interest in the land, but only an interest contingent on her surviving her mother, she had no alienable title to the lands.

The statute (§ 1798, Pope's Digest) providing that the grantee in any deed, executed by a grantor not then owning the land, purporting to convey the same in fee simple absolute would obtain the benefit of a title afterwards acquired by the grantor, makes no exception against the grantee in a quitclaim deed. But we have held, in the case of *Wells* v. *Chase,* 76 Ark. 417, 88 S. W. 1030 and other decisions rendered thereafter, that a quitclaim deed was not within the purview of this statute.

An examination of the opinion in the case of *Wells* v. *Chase* discloses that the court rested its opinion on the previous declaration by this court in the case of *Blanks* v. *Craig,* 72 Ark. 80, 78 S. W. 764, to the effect that "the statute only affects interests in land which the grantor has conveyed or which his deed purports to convey. It does not affect interests afterwards acquired by the grantor *which he has not previously conveyed or attempted to convey.*" (Italics supplied). The plain inference to be drawn from this language is that, where the grantor in a quitclaim deed conveys or attempts to convey an interest which he does not then own, but afterwards acquires, the grantee becomes the owner of such interest.

Now the deed from Mrs. Wells, though a quitclaim deed, purported, for a substantial consideration, to convey to appellee all her interest in the lands "present and prospective." As a contingent remainderman she had a "prospective" interest in the lands when she executed this deed, and she, by the plain language of her deed, conveyed this "prospective" interest. Therefore, when this "prospective" interest became, upon the death of

Mrs. Isabella J. Burbridge, a vested one it passed to appellee under this deed, which, though a quitclaim deed was fully effective to transfer title. *Bagley* v. *Fletcher,* 44 Ark. 153.

To give this deed the construction insisted on by appellant, we must ignore and treat as meaningless the word "prospective" where used therein. We may not do this. A fundamental rule is that in construing a deed every part thereof must be given effect if it can be done consistently with the rules of law. *Bunch* v. *Nicks,* 50 Ark. 367, 7 S. W. 563.

Even if the deed executed by Mrs. Wells to appellee should be held ineffective as a *conveyance* of title, it could well be sustained as an assignment by her to appellee of any and all interest in the land, present or future, owned by her. It has frequently been held that an assignment of a future interest, or expectancy, though unenforceable at law, is valid in equity and may be enforced in the latter forum when such expectancy ripens into a present and enjoyable estate. "In equity, by the great weight of authority, there can be a valid assignment of . . . property to be subsequently acquired, and of contingent and expectant interests, . . . A court of equity, for example, will uphold an assignment of an interest under a will, such as of a contingent bequest and legacy, to take effect on the happening of some future event, as the coming of age of the beneficiaries or the death of some person." 6 C. J. S., 1056. "Courts of equity have generally upheld assignments of expectancies by prospective heirs . . ." 4 Am. Jur. 269.

Appellant cites in support of the chancery court's holding on this phase of the matter our decision in the case of *Deener* v. *Watkins,* 191 Ark. 776, 87 S. W. 2d 994, where we held that a conveyance by a contingent remainderman, who did not survive the life tenant, made before the death of the life tenant, was ineffective. The difference between the situation in that case and the one at bar is apparent. There the remainderman died before the death of the life tenant, and his expectancy was therefore completely extinguished. Here, Mrs. Wells

survived her mother and the expectancy which Mrs. Wells owned when she conveyed all her interest "present and prospective" to appellee thereupon matured into a present and vested title.

The situation in the case at bar is somewhat analogous to that presented in the case of *Jernigan, Bank Commissioner* v. *Daughtry,* 194 Ark. 623, 109 S. W. 2d. 126, where we held that a mortgage executed by a contingent remainderman, before the death of the life tenant, became effective to carry the title of the remainderman when it became vested upon life tenant predeceasing the remainderman.

We conclude that under the deed of Nettie Burbridge Wells to appellee, upon the death of Mrs. Isabella J. Burbridge, survived by Mrs. Wells, Mrs. Wells' one-half interest in the lands vested in appellee, making him the owner of the entire estate.

## IV.

Appellant argues that the lower court had no jurisdiction of the ejectment suit because appellant was not in possession of the lands when the suit was commenced.

It was alleged in appellee's complaint that appellant was in wrongful possession of the lands. This allegation, appellant concedes, was sufficient to make the complaint, on this phase of the case, good on demurrer.

Appellant in its answer specifically pleaded the provisions of §§ 8918, 8920 and 8921, Pope's Digest, as a complete bar to appellee's right of action, and "as an additional investiture of the complete title in fee simple" in appellant. It was further alleged in the answer that more than 25 years before the filing of the suit one of appellant's predecessors in title, under claim of ownership, cut all the commercial timber then growing on the lands, and that "this act of actual adverse possession, and overt claim of unconditional ownership of the entire title was brought to the actual knowledge of the plaintiff more than 25 years before the present action was filed. During all of this period of more than 25 years the de-

fendant, and its predecessors in title, have openly and continuously claimed the absolute title in fee simple to all of the land here involved and the timber thereon growing, as against the plaintiff and all other persons, and have manifested and evidenced this claim of ownership by all of the usual and customary acts of ownership of which this type of land is subject and to which it is liable and susceptive, all of which was well known to the plaintiff during all of these many years. The defendant hereby expressly pleads the general statutes of limitation as a complete bar to plaintiff's action here pending.''

This was in effect a plea of adverse possession by appellant and appellant having asserted such a defense in its answer, appellee was not required to prove the actual ouster and adverse holding by appellant. ''Where a defendant in his plea or answer sets up the defense of adverse possession, his plea or answer to it will be treated as a confession of the ouster and render the proof thereof unnecessary on the trial.'' Newell on Ejectment, p. 133.

Dealing with a somewhat similar question in the case of *Brasher* v. *Taylor,* 109 Ark. 281, 159 S. W. 1120, and construing § 8920, Pope's Digest, which declares unimproved and unenclosed lands to be in the possession of one having color of title and paying taxes thereon, we said: ''There is no longer any reason for holding that actual or pedal possession by the defendant is an indispensable prerequisite to the right of the plaintiff to bring an ejectment suit against him.''

The circuit court properly held that failure of appellee to show actual possession of the lands by appellant did not defeat its jurisdiction in the ejectment suit.

## V.

Appellee filed three suits in the chancery court, in one case to enjoin cutting of timber on the lands involved herein and to recover damages for timber cut, and in the other two cases to recover damages for timber cut.

One of these (Case No. 2291 in the lower court), involved the oak and other hardwood timber; and this case, having been dismissed under stipulation of the parties, is not before us.

Case No. 2023 in the lower court was instituted on September 7, 1931, by appellee against appellant and others alleging waste and damage by the cutting and removing of certain piling from the lands. The chancery court found that the value of this piling at the time it was cut was $330.26, and, finding that appellee was entitled to only an undivided half interest in the lands, awarded him judgment for one-half of such value, $165.13, and interest. The lower court's findings as to the removal of this piling and the value thereof being supported by a preponderance of the evidence must be affirmed, but, since, as we have pointed out above, appellee was the owner of the entire interest in the lands, the decree in his favor should have been for the entire value of the piling plus six percent. interest thereon from date of removal.

In case No. 2211, filed by appellee on December 30, 1933, he sought to recover damages against S. H. Fullerton for the value of 3,200,000 feet of pine timber alleged to have been cut and removed by Fullerton from this land during the years 1901 to 1907, inclusive. S. H. Fullerton died in 1939 and the suit was thereafter revived against R. W. Fullerton, S. B. Fullerton, Mrs. Warren G. Horton, and Mrs. S. H. Davis, who were alleged to be the sole heirs and devisees of S. H. Fullerton, deceased.

The lower court held that, since appellee, being all the while *sui juris,* waited 29 or 30 years after the alleged damage was inflicted before seeking redress in a court of equity, his claim was barred by laches and staleness. This holding was correct. *Wilson* v. *Anthony,* 19 Ark. 16; *Brewer* v. *Keeler,* 42 Ark. 289; *Stuckey* v. *Lockard,* 87 Ark. 232, 112 S. W. 747; *Reese* v. *Bruce,* 136 Ark. 378, 206 S. W. 658.

Appellee seeks to avoid the consequence of his long delay in filing this suit by a showing that he did not

live near this land and did not discover that the pine timber had been cut until a short time before he instituted the action. But ignorance of one's rights does not prevent the application of the doctrine of laches in a suit brought after unreasonable delay, unless such ignorance was due to fraudulent concealment or misrepresentation by the party invoking the doctrine of laches. *Landman* v. *Fincher,* 196 Ark. 609, 119 S. W. 521.

Since we conclude that the decree of the chancery court in the suit by appellee against S. H. Fullerton and his heirs and devisees should be affirmed on the merits, it becomes unnecessary to deal with the contentions of each side as to the correctness of the revivor proceeding or to dispose of the motion of these heirs and devisees of S. H. Fullerton to dismiss the appeal as to them.

It follows from what has been said that the decree of the chancery court in case No. 2211 is affirmed and the decree in case No. 2023 reversed and the cause remanded with directions to the lower court to award to appellee the entire interest in the lands described in the pleadings and to enter decree in favor of appellee against appellant for $330.26, with interest thereon from September 7, 1931, at the rate of six percent. per annum and his costs; and in the ejectment suit the judgment of the lower court is reversed and the cause remanded to the lower court with directions to enter a judgment awarding to appellee possession of, and entire title to, the lands involved, and his costs; the costs in this court of the consolidated proceedings to be paid one-fourth by appellee and three-fourths by appellant.