BURBRIDGE *v.* GOODWIN.

4-9241                                    232 S. W. 2d 455

Opinion delivered July 3, 1950.

Rehearing denied October 2, 1950.

*Frank J. Wills,* for appellant.

*J. R. Wilson* and *Martin K. Fulk,* for appellee.

GEORGE ROSE SMITH, J.   The appellees are three attorneys, Shields Goodwin, DuVal Purkins, and U. A. Gentry, who brought this suit to obtain compensation for having successfully represented the appellant, L. J. Burbridge, in litigation that was concluded by our decision in *Bradley Lbr. Co.* v. *Burbridge,* 213 Ark. 165, 210 S. W. 2d 284.   That opinion disposed of three cases that had been consolidated in this court.   In one case, a suit in ejectment, we held that Burbridge had title to the 320 acres involved in all the cases.   In another, a suit to enjoin the removal of piling from the tract, we upheld Burbridge's contentions and awarded him a judgment for $330.26, with interest that brought the total amount to about $630.   The third suit was for the value of pine timber cut in the first decade of this century, and we held that the action was barred by laches.

While the record in the case at bar is of great length the issues are relatively simple. The appellees contend, and the chancellor held, that by their contract with Burbridge they are entitled to a one-fourth interest in the 320-acre tract, which is estimated to be worth about $80,000. The appellant contends that the appellees are entitled only to a fourth of the $630 recovery, his theory being either that the appellees had no contract of employment in the ejectment suit or that the ejectment suit was needlessly tried, since the issues would have been settled by the other cases.

The facts that led to the earlier litigation go back almost a century. In 1869 the land in question was conveyed to appellant's mother, Isabella Burbridge, "and the issue of her body." In 1891 Isabella Burbridge purported to convey the fee simple to J. F. Ritchie, who took possession. By subsequent conveyances Ritchie's title passed to the Bradley Lumber Company. Among many questions in the earlier litigation were those of adverse possession and of the construction of the 1869 deed. We held that Isabella Burbridge was merely a life tenant and that possession under her 1891 deed did not become adverse to the remainderman until the life tenant's death in 1932.

The first of the three earlier cases was the piling suit, filed by Purkins in 1931. Next came the pine suit, filed by Goodwin in 1933. It was Goodwin's opinion, which our decision confirmed, that the lumber company would acquire title by adverse possession unless an ejectment suit was instituted within seven years after Isabella Burbridge's death. He accordingly filed the ejectment suit in 1939, pursuant to the written contract of employment upon which the present case centers. By that contract Burbridge agreed that Goodwin should receive for his services 20% of any recovery by judgment, compromise, or otherwise, or 25% if the case should be appealed to this court.

At first Goodwin and Burbridge agreed to let the ejectment suit pend until the other cases, which were in chancery, were tried. For reasons originally satisfactory

to Burbridge none of the cases were brought to trial for many years after their filing. Goodwin entered the army in 1942 and later withdrew from the pine case. Burbridge, with Goodwin's approval, then employed Gentry to handle the pine case. The chancery cases were finally brought to trial on December 10, 1946, after Goodwin had returned to civilian life. There is testimony that on the evening before this trial the three attorneys and Burbridge all agreed that the ejectment suit should also be tried as quickly as possible so that all the cases could be consolidated in the Supreme Court. Burbridge was undoubtedly reluctant to have the ejectment suit tried, but the evidence shows pretty conclusively that he acceded to what he considered to be the more informed judgment of his attorneys.

On January 20, 1947, the three lawyers met with Burbridge and his son in Little Rock. At that time Goodwin was the attorney of record in the ejectment suit, Gentry in the pine suit, and Purkins in the piling suit. It was agreed that the attorneys would pool their efforts in all the cases and divide their fees equally with one another. It was also agreed that the suit at law would be tried as quickly as possible, although Burbridge was still opposed to this strategy and yielded to the others against his own inclinations. Thereafter the litigation was prosecuted to its conclusion, with the results that we have stated.

We find it unnecessary to decide whether Goodwin abandoned his employment in the ejectment suit when he was ordered overseas, for the testimony shows that the contract was later reinstated. Anderson Burbridge, the appellant's son, testified that at the conference of January 20, when the appellant agreed to the trial of the action at law, Goodwin asked, "Do you mean under my old contract?" and Burbridge, Sr., replied, "Yes." The appellant's version is to the same effect, though he says that he was acting under duress. Eight days later Goodwin sent a copy of his contract to his co-counsel, as a confirmation of their understanding as to the division of fees. A copy was also sent to Burbridge, but

he waited about thirteen weeks before first suggesting that Goodwin had abandoned his employment in the ejectment suit. In the meantime a hearing had been held in the circuit court, in which all the attorneys participated. We think it to be clearly shown that the three appellees did have a contract of employment in the ejectment suit.

The appellant's remaining contention is that he was overreached by his attorneys when he consented to the trial of the ejectment suit. The record does not sustain the charge that the appellees acted in bad faith in bringing the case to trial. Goodwin's contract fixed a 20% fee in the event of any recovery by judgment ''or otherwise.'' Even if the ejectment suit had been allowed to abide the outcome of the chancery appeal and even if that appeal had settled the issue of title, there would still have been a recovery in the ejectment suit upon a plea of *res judicata*. This recovery would necessarily have been by judgment or otherwise; so the appellees would have earned a 20% fee even without a trial on the merits. In this respect the case may be compared to one in which an attorney is employed in several similar suits and prosecutes a single test case to a successful conclusion. It certainly would not be seriously argued that if the adversary then concedes defeat in the untried cases the attorney is thereby deprived of his right to compensation.

Thus on this issue the real question is whether the appellees violated their fiduciary duty toward their client as a means of obtaining a fourth of the recovery instead of a fifth. We are unable to say that they even exercised bad judgment, much less bad faith. The sole issue in the ejectment suit was that of title to the land. The attorneys rightly feared that the pine suit might go off on the issue of laches, leaving the title still in controversy. The ground for decision adopted by the Supreme Court has occasionally come as a surprise to the attorneys in the case; so the appellees could hardly have given their client positive assurance that this court would adjudicate the title in the remaining chancery case—the

piling suit. The simpler and more certain strategy was to consolidate the ejectment suit with the others, so that the issue of title would be squarely presented on appeal. Both the appellant and his son agreed to this course of action, and both are business men of mature judgment. Finally, when the ejectment suit was called for trial Gentry stated to the court that his client desired a continuance, but both the judge and the opposing counsel insisted that the case be tried. We are acutely conscious of the fiduciary obligation that an attorney owes to his client, but we are convinced that these appellees were motivated throughout the litigation by the interests of their client rather than by any ends of their own.

Affirmed.