## KILLEAM *v.* CARTER.

## Opinion delivered February 19, 1898.

LIMITATIONS—RECOVERY OF HOMESTEAD.—The statute of limitations begins to run against an action by the heirs to recover possession of their ancestor's homestead, from one who holds it adversely after it has been abandoned by the widow, not from the widow's death, but from the time such adverse possession was acquired. (Page 70.)

Appeal from Logan Circuit Court

JEPHTHA H. EVANS, Judge.

*T. A. Pettigrew* and *J. V. Bourland*, for appellant.

The right of entry, in the heirs, accrued on the widow's abandonment. The widow waived her homestead by failing to claim it in the probate proceeding. 33 Ark. 399; 48 Ark. 230, and cases cited; 136 Mass. 286. When the widow abandons the homestead, the period of limitation begins to run against the remainderman. 53 Ark. 403; Dembitz on Land Titles, p. 1354; 55 Ark. 562; *ib.* 572; 11 S. W. 809; Kerr, Real Property, §§ 562, 1878. Appellees had but one right of entry— that by inheritance—and this is barred by the seven year statute. 62 Ark. 316.

*Rowe & Rowe*, for appellees.

The statute does not run against a *feme covert*. Sand. & H. Dig., § 4815. Assignment and acceptance of dower is no waiver of homestead. 58 Ark. 298; 47 Ark. 455; 54 Ark. 9;

29 Ark. 280; 47 Ark. 504. The court, sitting as a jury, found that there was no abandonment. Findings of fact by trial courts are not to be disturbed if supported by any evidence. 46 Ark. 142; 51 Ark. 467; 56 Ark. 314; 40 Ark. 298; 45 Ark. 41; 45 Ark. 94; 53 Ark. 327; 54 Ark. 229; 56 Ark. 621. The widow had a homestead right. 47 Ark. 509; 29 Ark. 633; 30 Tex. 633; 29 Ark. 280. The statute would not commence to run against a remainderman until the death of the widow. 58 Ark. 512; Tiedeman, Real Prop. §§ 715, 389 and note 2; Tyler on Ejectment and Adverse Enjoyment, 117 and 118; Am. & Eng. Enc. Law § 3, p. 720 and note 1; 22 Ark. 572; 42 Ark. 357; 47 Ark. 510; Wood, Lim. Actions, 527 and 528, note 1; 60 Ark. 74; 58 Ark. 512; 53 Ark. 402; 80 Mo. 127. Homestead is an estate. 29 Ark. 291; Tiedeman, Real Prop. § 158; 60 Ark. 71. A sale of homestead would be void. 50 Ark. 330; 47 Ark. 545; 29 Ark. 633; 29 Ark. 280.

WOOD, J. Jeremiah Carter died in 1863, seized of 160 acres of land, which constituted his homestead. Several years thereafter, 106⅔ acres of this land was sold by order of the probate court in a proceeding to which the widow of Carter and his heirs were made parties. In this proceeding, the remaining 53⅓ acres were set apart to the widow as dower. Upon this latter portion was situate the mansion house in which Carter lived at the time of his death, and in which she and the minor children continued to live,—she until her death in 1891, and they presumably until of age.

The children had all become of age in 1875. The appellant, Killeam, went into possession of the land in controversy under deed obtained from the purchaser at the administrator's sale. Appellant knew that his deed came from the purchaser at said sale. He went into possession under his deeds claiming to be the owner in fee, made valuable improvements, paid the taxes, and occupied the said land continuously for fifteen years, which the widow all this while knew, yet she made no claim to the land herself, but said that it belonged to Killeam.

This suit in ejectment was brought by the children and heirs of Carter in 1893 to recover of appellant the 106⅔ acres of land mentioned *supra*. The answer denies all material

allegations of the complaint, and sets up the statute of limitations of seven years.

The undisputed facts show an abandonment of the homestead by the widow, of which the heirs must have had notice. They were parties to the suit wherein the land in controversy was sold, and the widow's dower assigned. They lived, presumably until of age, with the widow on the tract adjoining. The youngest lacked only about two years of majority when appellant went into possession under his first deed. Those of them who were minors when he took possession under this deed certainly had no right to suppose or believe that he was holding under the widow, for she could not invest another with any rights that would be adverse to them. Appellant, from the first, occupied the land openly, continuously and adversely to all the world, and this went on for a period of about eighteen years after the heirs had reached their majority, until the bringing of this suit. In the absence of any proof of facts or circumstances which would preclude inquiry or investigation by the heirs into the nature of appellant's tenure, we think the character of his possession was such as to put them upon notice, at least upon inquiry which would inevitably have led to a knowledge of the fact of his adverse holding and the express recognition of his claim of ownership by the widow.

The question, then, is, in case of abandonment of the homestead by the widow and notice thereof to the heirs, will the statute of limitations begin to run against them before her death? We are aware of the well-settled rule that a remainderman or reversioner expectant upon an estate for life, "though he may, if he will, take notice of any disseisin done to the tenant of the particular estate, is yet not bound to do so, but may wait until his right of entry accrues upon the death of the tenant for life." *Kessinger* v. *Wilson*, 53 Ark. 403; *Ogden* v. *Ogden*, 60 Ark. 74. But this doctrine has no application, even by analogy, to a reversioner expectant upon the homestead rights of a widow, having notice of the termination of such rights. The law wisely grants to the widow the privilege of occupying the homestead so long as she desires. But it is a privilege purely personal to her, which she can neither convey to nor share with another. She may enjoy the

rents and profits only so long as she intends it as a home. Strictly speaking, she has no estate in the land itself, but only the privilege of occupancy. Alienation by her confers no rights, but it means abandonment, and the termination ·of her right of homestead. Not so with an estate for life. That terminates only upon the death of the life tenant. The widow can only be considered a tenant for life upon condition that she do not abandon. When that occurs, her rights are forfeited, and, *eo instanti*, the rights of the reversioner accrue. Necessarily so. His rights as the owner in fee are only temporarily suspended by reason of her superior rights, and when these end his must begin. And he cannot postpone the assertion of them against an adverse holder, of whose claim he has notice, until the widow's death, unless that should occur· within seven years after he has notice of her abandonment; for he should not, at most, be allowed to postpone the assertion of his rights beyond that time.

Judgment reversed, and cause remanded for new trial.