FLETCHER *v.* JOSEPHS.

Opinion delivered December 23, 1912.

1. ADVERSE POSSESSION—COLOR OF TITLE.—Although an administrator's
sale for the payment of debts was void for want of jurisdiction in the
court to order same, and although no confirmation of the sale was
made, the administrator's deed is such an "appearance of title" as to
constitute color of title. (Page 652.)

2. HOMESTEAD—WIDOW'S RIGHT.—The rights of a widow in her hus-
band's homestead are personal and can not be transferred; and by
conveying the homestead to another she will be held to have aban-
doned her rights therein, and the homestead thereupon becomes vested
in the minor children. (Page 652.)

3. DOWER—EFFECT OF CONVEYANCE OF UNASSIGNED DOWER.—A widow's right to hold her husband's dwelling house and the farm attached until dower be assigned is a personal privilege, and not an estate in the land which can be transferred to another, and in case she does transfer it the right of entry of the heirs is complete, subject only to the right to have dower assigned. (Page 653.)

4. ADVERSE POSSESSION—TITLE ACQUIRED.—One in adverse possession of land under color of title for more than seven years acquires title. (Page 653.)

Appeal from Lawrence Chancery Court; *Charles D. Frierson*, Chancellor; affirmed.

*J. N. Rachels, H. L. Ponder* and *Jno. W. & Jos. M. Stayton*, for appellants.

1. The land was the homestead of James Fletcher and, after the order of sale, but before the sale, was set apart to the widow as a homestead. The sale by the administrator, and the deed executed by him to Shirey three days later, conveyed no title to Shirey, because (1) it had been set apart as a homestead. 79 Ark. 410; 56 Ark. 563; 50 Ark. 329; 49 Ark. 75; 47 Ark. 445; (2) The sale was incomplete for lack of confirmation, and the deed could convey no interest. 34 Ark. 346; 38 Ark. 80; 47 Ark. 419; 48 Ark. 250; 55 Ark. 307; Such a deed is no evidence of title. 47 Ark. 215. Neither is it color of title. 67 Ala. 441; 15 Ill. 178.

2. Shirey did not attempt, however, to go into possession under the administrator's deed, but admits that he knew that Mrs. Fletcher's dower right was outstanding, and that he bought it in order to get her off the land and himself go into possession. At that time, her dower not having been assigned, she had no interest that she could convey to a stranger. She only had a mere right of occupancy of the mansion house and farm attached thereto until her dower should be assigned, which was personal to her. 62 Ark. 61; Kirby's Dig., § 7204; 44 Ark. 490; 48 Ark. 230.

3. Mrs. Fletcher's deed did vest in Shirey an equitable title to an undivided portion of the land, a right to have her dower ascertained and set apart to him for his use during her lifetime. 79 Ark. 412; 62 Ark. 61. And, upon the execution and delivery of her deed, she forfeited her rights, the heirs became entitled to enter, they being seized in fee of an undi-

vided two-thirds of the land, with remainder in fee of the remaining one-third after the termination of her life, and Shirey and the heirs from that time on were tenants in common of the whole tract. 2 Blackstone, Com. 191-192; 2 A. K. Mar. (Ky.) 388.

The fact that Shirey was put into possession and remained in possession of the entire tract until the widow's death did not destroy the tenancy. The possession of one tenant in common is the possession of all. 61 Ark. 540. His possession would not necessarily ripen into title. 99 Ark. 87; 3 Sharswood & Budd, Leading Cases, Real Prop. 128.

4. Shirey's claim of title by adverse possession must be worked out through the rules governing adverse possession as against tenants in common. His proof must show something that evidences an intention to claim a greater right than that conveyed by the widow's deed, and in a way so notorious as to have brought home notice, actual or constructive, of such intent, to the heirs, equivalent to a re-entry and claim of the fee. 39 Wis. 538.

Placing the administrator's deed to Shirey on record did not have the effect of constructive notice to the heirs. The constructive notice of a recorded deed is notice only to those in the line of title of that deed. The administrator's deed was that of a stranger to the title. 99 Ark. 446; 76 Ark. 525; 69 Ark. 95; Devlin on Deeds, (2 ed.), § § 712-13; 100 Ill. 581; Pomeroy, Eq. Jur., § 658. There was nothing in Shirey's occupancy or his pernancy of the rents and profits, his improvements, if any, or his payment of taxes, inconsistent with the character of his interest as tenant in common. 99 Ark. 87; 29 Wis. 249; 39 Wis. 538; Wood, Limitations of Actions, 509.

5. Shirey will not be permitted to reap the benefit of his own wrongful acts. He is estopped by the deliberate concealments and deceit practiced towards the widow and heirs of Fletcher. 35 Ark. 376; 43 Ark. 28; 51 Ark. 61;

*J. N. Beakley, Stuckey & Stuckey* and *Campbell & Suits,* for appellees.

The administrator's deed is such as to constitute color of title. 67 Ark. 184; 1 Cyc. 1093; 2 Enc. Pl. & Pr. 513; 2

Words & Phrases, 1264. The question of faudulent mis-
representation is disposed of by the chancellor's finding that
the evidence is not sufficient to establish it and thereby prevent
the running of the statute of limitations. The following
authorities fully sustain the court's decree. 62 Ark. 313;
65 Ark. 68; 72 Ark. 446; 79 Ark. 408; 83 Ark. 196; 84 Ark.
160; 87 Ark. 428; 89 Ark. 168; 92 Ark. 143; *Id.* 625; 95
Ark. 256.

SMITH, J. On the 18th day of April, 1903, the appel-
lants, Wm. Fletcher and others, sole heirs at law of James
Fletcher, deceased, filed their complaint in the Lawrence
Circuit Court against A. W. Shirey, claiming to be the owner
of east one-half southwest quarter section 22, township 17
north, range 1 east, Lawrence County, Ark. The cause was
transferred to the equity side by consent of all parties, and the
plaintiffs filed an amended complaint, the substance of which
is as follows: That on the 14th day of December, 1872, James
Fletcher died seized and possessed of the above-described land,
which was his homestead, leaving him surviving Harriet
Fletcher, his widow, and the plaintiffs, who were his children
and grandchildren.

The complaint further alleged that, on the death of
said Fletcher, one A. B. Israel was appointed administrator
of his estate on the 30th day of January, 1873, and that he
applied to the probate court of said county for an order to sell
said lands for the payment of debts, and that the land was
ordered sold by the court, and in pursuance of said order,
the administrator sold the land on December 6, 1873, to
A. W. Shirey, and on the 9th day of December, 1873, executed
to him a deed therefor.

The administrator made no report of this sale, and it
was never approved or confirmed. Plaintiffs further alleged
that the defendant knew he had acquired no title, and failed
to have the sale confirmed, because he knew the court had no
right to confirm it, but took the deed to have some color of
title, and conceived the plan of defrauding plaintiffs of their
rights, and, in pursuit of said plan to defraud, he purchased
from the said Harriet Fletcher her right of dower and homestead
in said land, her dower then not having been assigned, and
at the same time advised her, and induced her to believe, that the

rights of her children would be fully protected by him, and that at her death said land would go to them, and that he was only endeavoring to buy her life interest therein; and, relying upon said assurances so made by defendant, she conveyed to him on January 22, 1874, all her right of dower therein. And the complaint further alleged that, desiring to conceal the effect of the conveyance of the said Harriet Fletcher, the defendant withheld said deed from record.

The complaint further alleged that some of the plaintiffs were present when the trade was made and heard the assurances given their mother that the defendant desired to buy only her life interest, and that as soon as she died the land would become the property of her children, and that the only effect of the deed he desired was to enable him to have the use of the land and its rents until the death of their mother; and that all this occurred before the deed was executed, and until recently plaintiffs understood defendant was claiming only the life estate of their mother, and that only by reason of the fraudulent assurances of defendant have they allowed him to occupy said land through all of these years, without making any claim therefor, or asserting their rights.

The answer of the defendant Shirey specifically denied the allegations of the complaint and set up adverse possession for seven years, and for more than three years after all minor heirs had attained their majority.

Before the final hearing, the death of defendant A. W. Shirey was suggested and proved, and the cause revived in the name of Louis Josephs, his executor.

At the final hearing, a copy of the petition of the administrator to the probate court was offered in evidence, showing the personal property was exhausted and praying a sale of the lands to pay debts. There was also offered in evidence the order of the court directing the sale of the land, which order was made on October 3, 1873. There was also offered the petition of the widow, filed on the 17th day of November, 1873, praying that the land be set aside to her as a homestead and the order of the court, made on the same day, granting the prayer of that petition. The certificate of the county clerk was also offered, showing there had been no report of said administrator's sale and no confirmation thereof.

The deed from the administrator to Shirey was not recorded until the 8th day of February, 1878.

The deed from Harriet Fletcher was made on the 22d day of January, 1874, and the material portion of the same is as follows: "I, Harriet Fletcher, do hereby relinquish all of my right of and title to dower to the following land, towit: east one-half, southwest quarter, section 22, township 17 north, range 1 east, for the consideration of the sum of $400, paid to me by Arthur W. Shirey, and he is to have and to hold the same forever, and I do hereby warrant and defend the same to him and his heirs forever against the lawful claim of all persons."

For proof of the allegations of misrepresentation and fraud, the plaintiffs relied principally upon the evidence of two of the sons, who testified they heard the conversation between Shirey and their mother. One of these witnesses was eleven or twelve years old at the time, and the other was eight or nine. Another witness testified that at the time he was between seventeen and eighteen years old, and that he overheard a conversation between Mr. Shirey and a Mr. Henry, for whom witness was picking cotton, in which Shirey said: "I just bought the old lady's lifetime dower." A daughter of Harriet Fletcher, who was older than her brothers, also testified and substantially corroborated their statement.

The defendant denied all the material statements of the plaintiff, and the chancellor accepted his version of the transaction as the truth, and, after careful consideration of the evidence, we can not say that his finding is contrary to the preponderance of the evidence.

Shirey stated that this was his first land transaction, although he afterwards became a large land owner. He stated that he bought the land at a public sale, as he was the highest bidder; that he did not look to see that the sale to him was reported and confirmed for the reason that he did not know this was necessary, and that he supposed it was only necessary for him to pay his money and get his deed; and that he did this, and that the $600 which he paid the administrator for the land was a fair price for the land at the time it was sold, under the circumstances. He supposed he had a perfectly good title to that land, subject to the widow's dower, and he pro-

cured the deed from her to get possession of the land, and he had occupied it for nearly thirty years without suspecting that any one questioned his title. Mrs. Fletcher died January 20, 1902.

We are of opinion that, although the administrator's sale for the payment of debts was void for want of jurisdiction in the court to order the same, and although no confirmation of the sale seems to have been made, yet the administrator's deed is such an "appearance of title" as to constitute color of title. *White* v. *Stokes,* 67 Ark. 184, and cases cited; 1 Cyc. 1093; 2 Enc. L. & P. 513; 2 Words & Phrases, 1264.

It is urged with great force that the language of Shirey to the widow amounted to such fraudulent misrepresentation as would prevent the running of the statute, but we do not think the evidence sufficient for this purpose, and we concur in the chancellor's finding that, "during the many years that have elapsed since the alleged conversation, these plaintiffs, all of whom have grown to manhood or womanhood long ago, should have made some further investigation as to the rights claimed by Shirey, who during all the time was openly in possession of the land under a recorded deed from the administrator of their father's estate. No claim of fraud could be based upon the failure to record the widow's deed, because all admit that they knew of that deed at the time it was made."

But appellants insist here that Shirey's possession could not be adverse for the reason that the deed of the widow put him in possession of the whole tract, and that this deed gave him that right of occupancy which in equity he was entitled to have under Mrs. Fletcher's deed, and that such possession would not ripen into title because he was a tenant in common with the heirs.

The fallacy of this argument grows out of a misconception of the effect of the deed from the widow to Shirey. Many cases have held that the widow's rights in the homestead are personal and can not be transferred, and that by conveying the homestead to another she will be held to have abandoned her rights therein, and the homestead thereupon becomes vested in the minor children. *Gatlin* v. *Lafon,* 95 Ark. 256, and case there cited.

It was held in the case of *Griffin* v. *Dunn,* 79 Ark. 412,

that the widow's right to hold the dwelling house and the farm attached until dower shall be assigned is a personal privilege, and not an estate in the land which can be transferred to another. She may rent out the farm and receive the rents and profits, but can not convey it or transfer her rights. If she does, she thereby abandons it, and the right of entry of the heirs becomes complete, subject only to the right to have dower assigned. The same case holds, upon the authority of the case of *Weaver* v. *Rush*, 62 Ark. 57, that the conveyance by the widow carried with it an equitable transfer to the grantee of her unassigned dower right, but this outstanding right to have dower assigned did not postpone the heir's right of entry.

"A widow's dower in the realty of her deceased husband, before it is assigned to her as the statute directs, is a mere 'thing in action' that can not be the subject of a conveyance by her to a stranger, so as to confer on him any rights that he can enforce in a court of law." *Weaver* v. *Rush, supra.*

Shirey's possession, both in fact and in law, was adverse to the heirs, and the cause of action here sued upon was barred many years before the suit was instituted. *Carnall* v. *Wilson,* 21 Ark. 62; *Padgett* v. *Norman,* 44 Ark. 490; *Barnett* v. *Mecham,* 62 Ark. 313; *Garibaldi* v. *Jones,* 48 Ark. 230; *Killeam* v. *Carter,* 65 Ark. 68; *McAndrews* v. *Hollingsworth,* 72 Ark. 446; *Griffin* v. *Dunn,* 79 Ark. 408; *Gannon* v. *Moore,* 83 Ark. 196; *Stubbs* v. *Pitts,* 84 Ark. 160; *Harris* v. *Brady,* 87 Ark. 428; *Burrel* v. *Boken,* 89 Ark. 168; *Smith* v. *Scott,* 92 Ark. 143; *Gatlin* v. *Lafon,* 95 Ark. 356; *Felton* v. *Brown,* 102 Ark. 658.

The findings of the chancellor are supported by the evidence, and are in accordance with the law as declared in the above cited cases, upon the subjects here discussed, and the decree is accordingly affirmed.