CLARK *v.* FRIEND.

Opinion delivered May 16, 1927.

1. HOMESTEAD—ABANDONMENT BY WIDOW.—Where a widow removes from the homestead, she thereby abandons her homestead rights, affording ground for re-entry by the holder of the title in remainder.

2. LIMITATION OF ACTIONS—ABANDONMENT OF HOMESTEAD.—Where a widow abandoned her homestead, its subsequent occupancy by an adverse claimant created a right of re-entry by the holder of title in remainder so as to start the statute of limitation against both the widow and an heir not under disability.

3. LIMITATION OF ACTIONS.—A widow's unassigned dower right will not bar right of re-entry by heirs so as to prevent the statute of limitation from running in favor of an adverse occupant.

4. DEEDS—CONSIDERATION.—The cancellation of a mortgage and satisfaction of a debt which it secured is sufficient consideration for a deed by the mortgagor to the mortgagee.

5. COMPROMISE AND SETTLEMENT—CONCLUSIVENESS.—Where there was a mutual settlement between a mortgagor and mortgagee in

which the latter obtained the land, the heirs of the mortgagor can not question the validity of such settlement.

6. QUIETING TITLE—LACHES.—A suit to establish title to land is barred by laches where it was not brought until after all parties to the mortgage under which defendants claim were dead, the debt itself was barred, and large sums of money had been expended and oil discovered on the land, which otherwise was of little value.

7. QUIETING TITLE—LACHES.—A court of equity may, in the exercise of its inherent powers, refuse relief where it is sought after undue and unexplained delay and where injustice would result in the particular case by granting the relief asked.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

*Coleman & Gantt, J. Bernhardt* and *U. J. Cone,* for appellant.

*Mahony, Yocum & Saye,* for appellee.

SMITH, J. In September, 1923, W. S. Biles, trustee, instituted suit in the Union Chancery Court against A. W. Friend and his lessee, the Pure Oil Company, to establish title to the southwest quarter of the southeast quarter of section 6, township 16 south, range 15 west, claiming title by sundry conveyances from the alleged collateral heirs of one Charlie Wilson, deceased. Defendants claimed title under an alleged deed from Charlie Wilson to J. M. Young, or under a foreclosure of a mortgage from Wilson to Young, who conveyed to Friend, the lessor of the Pure Oil Company. Defendants also claimed title by adverse possession and under a sale for the non-payment of the taxes for the year 1917, and that plaintiff's cause of action is barred by laches. Various parties intervened claiming as and under alleged collateral heirs of Charlie Wilson and his widow, Lizzie Wilson.

O. W. Clark, trustee, intervened and claimed title under a warranty deed from Fannie Watt, who, it is alleged, is the granddaughter and sole heir at law of Charlie Wilson, who is the common source of title of all claimants.

The decree of the court below was in favor of Friend and his lessee upon the finding that the cause of action

was barred by limitations and laches, and from this decree Clark, trustee, has appealed. It will be unnecessary to set out the claims of the other parties, as this appeal concerns only the respective claims of Friend and his lessee and Clark, trustee.

Charlie Wilson owned, at the time of his death, an adjoining forty-acre tract of land, described as the southeast quarter of the southwest quarter of section 6, township 16 south, range 15 west, which the witnesses refer to as the west forty in contradistinction to the forty acres involved in this litigation, which is called the east forty. We will employ the same designations. Both tracts are now very valuable, as there are a number of producing oil wells on each. The west forty was the subject of the litigation in the case of *Wilson* v. *Biles,* 171 Ark. 912. Much of the history of Charlie Wilson and his heirs is set out in the former opinion, but the decision in that case has no bearing on the decision in the present appeal.

In taking testimony in the present case the fact was developed that Charlie Wilson had a granddaughter, who, if alive and found, would inherit to the exclusion of the collateral heirs. After an extended search Fannie Watt, the alleged heir, was found, and Clark, as trustee, procured a deed from her, and, by an intervention which he filed, the title thus acquired was set up in opposition to that of all other claimants.

Fannie Watt is not a party to this litigation, but during its progress an attorney representing her filed a pleading, which was denominated "suggestion to the court," in which she alleged that she had brought suit in the Federal court against her grantee, alleging that the deed from her was void as having been obtained by fraud. The court found that Fannie Watt had declined to become a party to the litigation, and had not been made a party and had filed no pleading whatever making her a party, and the cause was disposed of without attempting to adjudge the merits of her "suggestion" that the deed from her had been fraudulently obtained.

It is claimed by appellant that Fannie Watt is the grandchild of Charlie Wilson, and many witnesses testified as to her identity and her relationship to Charlie Wilson. We do not set out this testimony, because we have concluded that, even though it be conceded that the testimony has established her identity as the granddaughter and sole heir at law of Charlie Wilson, and that her deed is valid, her grantee is not entitled to recover in this action.

The testimony establishes the fact that Charlie Wilson lived on the east forty and cultivated portions of both tracts, and continued to reside on the east forty until his death, which occurred in 1910. Neither forty possessed any great value at that time, and the east forty sold for $10 per acre as late as 1920.

It is very clearly established that Charlie Wilson and his wife executed a deed of trust to Young & Anderson, who were merchants doing a farm-furnishing business, to secure an indebtedness incurred for advances. It is not clear whether the deed of trust covered both forties, but it is certain that the east forty was embraced in the deed of trust. It is also clearly established that Young, who appears to be the surviving member of the firm of Young & Anderson, took possession of the east forty as early as 1909, which is the year preceding the death of Charlie Wilson. It is not clear under what authority this possession was taken. The answer alleged that possession was taken under a deed from Wilson to Young, but the testimony makes it much more probable that the possession is referable to a foreclosure of the deed of trust, or a satisfaction thereof, whereby the east forty was conveyed to Young.

The execution of the deed of trust is established by the testimony of the justice of the peace who took the acknowledgments, and the proof of statements made by both Wilson and his wife in regard thereto. It was shown that the land was advertised for sale by the trustee in the deed of trust, but it was not shown that the land was ever appraised or that the trustee ever sold it. The

parties who could have cleared up these uncertainties died before the institution of this litigation. Wilson and his wife are dead, and so also are Young, the surviving member of the firm of Young & Anderson, and the trustee who advertised the land for sale. Young kept his papers in his store, and these were all lost when the store was destroyed by fire. The deed of trust had never been recorded.

A number of persons who lived near the land and who knew Charlie Wilson and his wife testified that both Wilson and his wife had told them that they had satisfied the deed of trust by letting Young have the east forty, and that this tract had become known as the Young land in Wilson's lifetime, and that Young was in possession thereof by tenant for at least a year before Wilson died, although Wilson did not move from the house in which he lived, which was on the east forty. It does not appear by what arrangement Wilson retained possession of this house until his death, but it does appear that, after Wilson's death, his widow changed her residence to the west forty and resided there until her death, which occurred in 1922, and that she said to a number of persons that Young owned the east forty, having taken title thereto in satisfaction of the deed of trust. But, whether under a deed from Wilson and his wife or under a foreclosure sale and a trustee's deed, or a parol settlement and satisfaction of the deed of trust, the fact is established that, in some manner, Young took actual possession of the east forty during Wilson's lifetime and remained in possession of it by tenant until 1920, when he sold it to Friend, trustee, for $400. It was also shown that Young's possession was not that of a mortgagee in possession, but that of an owner claiming title thereto, and that this title was recognized by both Wilson and his wife.

As we have said, the court found that the cause of action was barred both by the adverse possession of Young for a period of more than seven years and by laches in bringing the suit. It is insisted that Fannie Watt is not barred by laches, because it appears that,

after she had been located, she immediately consulted an attorney in regard to enforcing her rights and that her grantee at once intervened and set up in this litigation the title which had been acquired from her.

It is insisted that the plea of limitations cannot be sustained, for the reason that Lizzie Wilson was in possession of the land as her homestead until her death in 1922, and that Fannie Watt, as heir at law, could not have sued to recover the land until the termination of the homestead right of the widow, and this suit was, in fact, begun in 1923, and the intervention setting up her claim of title was filed May 25, 1925.

It is the contention of appellee (and the finding of the court sustains the contention) that Wilson and his wife in some manner conveyed the east forty to Young, and, while Wilson did not remove from this forty, he occupied only a house on it, the land being cultivated during Wilson's lifetime by the tenant of Young. It is not shown under what arrangement Wilson occupied the house if he had in fact conveyed the land, but, after Wilson's death, his widow removed to the west forty and lived there until her death. An adverse occupant and claimant was thus in possession of the east forty from which she removed. This was clearly an abandonment of the homestead right, if it then existed, in the east forty. It is settled law that the abandonment of the homestead right affords grounds for re-entry by the holder of the title in remainder. *Murphy* v. *Graves,* 170 Ark. 180, 279 S. W. 359; *Garibaldi* v. *Jones,* 48 Ark. 230, 2 S. W. 844; *Warren* v. *Martin,* 168 Ark. 682, 272 S. W. 367; *Brinkley* v. *Taylor,* 111 Ark. 309, 163 S. W. 521; *Fletcher* v. *Joseph,* 105 Ark. 646, 152 S. W. 293; *Griffin* v. *Dunn,* 79 Ark. 408, 96 S. W. 190; *Killiam* v. *Carter,* 65 Ark. 68, 44 S. W. 1032; *Barnett* v. *Meacham,* 62 Ark. 313, 35 S. W. 533.

It is true, if the title to the east forty had not in some manner been conveyed to and acquired by Young, the widow had an unassigned dower right therein; but this did not bar the right of entry of the heirs so as to prevent

the statute of limitations from running. *Murphy* v. *Graves, supra; Griffin* v. *Dunn,* 79 Ark. 408, 96 S. W. 190; *Fletcher* v. *Josephs,* 105 Ark. 646, 152 S. W. 293.

The widow of Charlie Wilson did not remarry, and she was not at any time after his death under the disability of coverture, and it is not claimed that the granddaughter was under the disability of either infancy or coverture, and there was therefore no reason why the statute of limitations did not run against both the widow and the heir. Indeed, the statute of limitations may have commenced running against Charlie Wilson himself if there was in fact no grant from him.

It is not claimed that there was any consideration for the grant except the cancellation of the mortgage and the satisfaction of the debt which it secured; but this was a sufficient consideration for a deed. *Todd* v. *Grayson,* 168 Ark. 446, 270 S. W. 595. And if there was a mutual settlement of the matter, the heirs of Wilson cannot question the validity of the settlement. *Straughan* v. *Bennett,* 153 Ark. 254, 240 S. W. 30.

There may have been no deed from Wilson to Young; there may have been no foreclosure of the deed of trust; but there was a contract of some kind whereby Young was put in possession of the east forty and was allowed to remain without question by the widow, who resided on the adjoining forty, or by the heir, whose whereabouts and residence was unknown. The suit was not begun until 1923, at which time all the parties to the deed of trust—the grantor and his wife, the beneficiary and the trustee—were all dead. The debt secured by the deed of trust was long since barred. Large sums of money had been expended in developing oil before any one attempted to assert any rights through or under Fannie Watt. True, she knew nothing of the discovery of the oil, but that fact proves only her indifference to her grandfather and to her inheritance. She, no doubt, would have continued inert and indifferent but for the discovery of oil, which resulted from the expenditure of the large sum

of money always involved in such explorations and the diligence of appellant in searching her out.

We said, in the case of *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970:

"There is no hard and fast rule as to what constitutes laches. It is well settled that a court of equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the relief asked. It is usually said that the two most important circumstances in such cases are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other in so far as it relates to the remedy. (Citing cases)."

The doctrine there announced is applicable here, and, after a careful consideration of the testimony, aided by the excellent briefs of counsel, we have concluded that the decree of the court below is correct, and should be affirmed, and it is so ordered.