Meadows *v.* Hardcastle.

4-9547                                          242 S. W. 2d 710

Opinion delivered October 15, 1951.

*Bob Bailey, Jr.,* and *Bob Bailey,* for appellant.
*Richard Mobley* and *Robt. J. White,* for appellee.

Eᴅ. F. McFᴀᴅᴅɪɴ, Justice. Appellants brought this suit to quiet their title to real estate, and from a decree refusing the prayed relief there is this appeal.

Mrs. Johnnie Bell Teal was the admitted common source of title. In 1937 she died testate, survived by her husband, W. J. Teal, and children and grandchildren. Her will, duly admitted to probate in Pope County in 1937, appointed Mr. Teal as executor and also stated: "I give to each of my children (naming them) or their heirs the sum of One Dollar. . . . I hereby give and bequeath to my husband, W. J. Teal, all my real estate . . . for his natural life and at his death it is hereby decreed that all my property and estate revert back to the heirs above named and they are to share equally in my estate."

"The heirs above named", as stated in the will, were the children of Mrs. Teal by her two prior marriages or the descendants of any deceased child. Mr.

Teal, as executor, paid $1.00 to each of the beneficiaries, and in 1937 conveyed Mrs. Teal's real estate to Dr. Berryman by warranty deed, under circumstances subsequently to be mentioned. Dr. Berryman conveyed the real estate to the appellants who in 1948 filed this suit to quiet title against the children[1] and heirs of Mrs. Teal, alleging that such defendants were barred by limitations, laches and estoppel from all claims of ownership to the property. Mr. Teal is alive, and was a witness for appellants. The Chancery Court dismissed the suit to quiet title.

I. *Limitations.* The appellants claim that when Mr. Teal conveyed to Dr. Berryman in 1937, such conveyance amounted to an abandonment of the property by Mr. Teal, and that limitations commenced at that time to run against the appellees. This contention brings us to the circumstances surrounding such conveyance. Mr. Teal and other witnesses for appellants testified that Mrs. Teal owed Dr. Berryman $1,440 for services rendered in her last illness; that in 1937 the property here involved was worth only $1,200; that Mr. Teal offered to convey the property to any of Mrs. Teal's children who would pay Dr. Berryman's claim; that all refused; and that thereupon Mr. Teal conveyed the property to Dr. Berryman to satisfy the claim of $1,440. Although Mr. Teal testified that Dr. Berryman's claim was filed and allowed by him, and also allowed by Probate Court order, nevertheless, a search of the probate records failed to disclose any order of the Court showing either filing or allowance of the claim. Furthermore, some of the appellees who testified denied Mr. Teal's testimony regarding his offer to convey the property to any of them who would pay Dr. Berryman. They also denied any knowledge of any claim of Dr. Berryman and insisted that Mr. Teal held only a life estate in the property.

[1] The complaint alleged that Floyd Willis was a son of Mrs. Teal and had executed a quitclaim deed to appellants, so he was not made a party to this suit.

As previously stated, appellants insist that the con. veyance by Mr. Teal to Dr. Berryman in 1937 was an abandonment of the property by Mr. Teal, and that such. abandonment started the statute of limitations against the appellees and in favor of Dr. Berryman and these appellants. To sustain such position, appellants cite, *inter alia, Killeam* v. *Carter,* 65 Ark. 68, 44 S. W. 1032; *Murphy* v. *Graves,* 170 Ark. 180, 279 S. W. 359; *Bowen* v. *Black,* 170 Ark. 237, 279 S. W. 782; *Clark* v. *Friend,* 174 Ark. 26, 295 S. W. 392; *Cunningham* v. *Dellmon,* 151 Ark. 409, 237 S. W. 450; and *Smart* v. *Murphy,* 200 Ark. 406, 139 S. W. 2d 33.

Appellees insist that Mr. Teal was and is a life tenant, and that, since he is still alive, limitations will not begin to run against the appellees until Mr. Teal's death. They cite, *inter alia, Smith* v. *Maberry,* 148 Ark. 216, 229 S. W. 718, and *Bradley Lumber Co.* v. *Burbridge,* 213 Ark. 165, 210 S. W. 2d 284.

The appellees are correct in their contentions. It is clear that Mr. Teal held a life estate under the will, and that he recognized the will by having it probated, and by paying $1.00 to each of the persons named in the will. We have, therefore, a clear case of a life tenant making an attempted conveyance of the fee; and in *Bradley Lumber Co.* v. *Burbridge, supra,* Mr. Justice ROBINS, speaking for the Court, said:

"No principle of law is better established than that the possession of one claiming under a life tenant is not adverse to the remainderman until the death of the life tenant. . . . Nor did the attempted conveyance by Isabella J. Burbridge of the entire estate to J. F. Ritchie work a forfeiture of the life estate or start the statute of limitations to running against appellee."

The rule that the abandonment of the homestead by the widow starts the statute of limitations to run against the heirs does no apply when a person holding as a life tenant conveys property. In *Killeam* v. *Carter,* 65 Ark. 68, 44 S. W. 1032, Mr. Justice WOOD pointed out the dis-

tinction between the widow's right of homestead and the right of a life tenant:

"The question, then, is, in case of abandonment of the homestead by the widow and notice thereof to the heirs, will the statute of limitations begin to run against them before her death? We are aware of the well-settled rule that a remainderman or reversioner expectant upon an estate for life, 'though he may, if he will, take notice of any disseisin done to the tenant of the particular estate, is yet not bound to do so, but may wait until his right of entry accrues upon the death of the tenant for life.' *Kessinger* v. *Wilson,* 53 Ark. 400, 14 S. W. 96; *Ogden* v. *Ogden,* 60 Ark. 70, 28 S. W. 796. But this doctrine has no application, even by analogy, to a reversioner expectant upon the homestead rights of a widow, having notice of the termination of such rights. The law wisely grants to the widow the privilege of occupying the homestead so long as she desires. But it is a privilege purely personal to her, which she can neither convey to nor share with another. She may enjoy the rents and profits only so long as she intends it as a home. Strictly speaking, she has no estate in the land itself, but only the privilege of occupancy. Alienation by her confers no rights, but it means abandonment, and the termination of her right of homestead. Not so with an estate for life. That terminates only upon the death of the life tenant."

Other cases that have recognized the distinction between the estate of a life tenant and the widow's right of homestead are: *Neeley* v. *Martin,* 126 Ark. 1, 189 S. W. 182; *Champion* v. *Williams,* 165 Ark. 328, 264 S. W. 972; and *Maloney* v. *McCullough,* 215 Ark. 570, 221 S. W. 2d 770. In the case at bar limitations had not commenced to run against the appellees as remaindermen when this suit was filed to quiet title; and the Chancery Court was correct in refusing to sustain the appellants' plea of limitations.

II. *Laches and Estoppel.* Little need be said as to these points. Laches is generally considered to be a shield of equitable defense rather than a sword for the

investiture of legal title. See *Taylor* v. *Leonard,* 94 Ark. 122, 126 S. W. 387, and *Anders* v. *Roark,* 108 Ark. 248, 156 S. W. 1018. See also 19 Am. Jur. 340. Assuming, not deciding, that appellants were in a position to invoke either laches or estoppel, nevertheless, we find no facts in this case to support either of such pleas. The appellees, as remaindermen, were under no obligation to act in the case at bar, so they could not have been guilty of laches. Neither did the appellees do, or fail to do, anything on which appellants could base an estoppel.

III. *Improvements.* Appellants claim that they have improved the property and should recover for such improvements. Appellees claim, *inter alia,* that appellants have merely kept the property in repair. But this matter of improvements is premature because the life tenant is still alive and his grantee is in possession. This is a suit to quiet title rather than to establish the fact or value of improvements.

### CONCLUSION

As against the appellees, the appellants owned only an estate for the life of Mr. Teal; and the Chancery Court correctly refused to quiet appellants' title to the fee.

Affirmed.