UNITED STATES of America

v.

**164.51 ACRES OF LAND, MORE OR LESS, IN VAN BUREN AND CLEBURNE COUNTIES, ARKANSAS, and Oscar Barger et al., and Unknown Owners.**

No. LR–60–C–108.

United States District Court
E. D. Arkansas, W. D.
May 16, 1962.

Opie Rogers, Clinton, Ark., and N. J. Henley, Marshall, Ark., for Oscar Barger and Gracie Barger, his wife.

Alton Bittle and Leon Reed, Heber Springs, Ark., for Oneita Barnum Bradford and Glenn Barnum.

HENLEY, Chief Judge.

This land condemnation suit commenced by plaintiff, United States of America, is now before the Court for disposition of a controversy which has arisen between Oscar Barger and Gracie Barger, his wife, on the one hand, and Glenn Barnum and Oneita Barnum Bradford, on the other hand, as to the ownership at the time of the Government's taking of Tract 1515.[1] Since the Court will be required to order appropriate distribution of the compensation to be paid by the Government for the taking of this tract, the Court has ancillary jurisdiction to determine who owned the land when the Government took it.

The controversy has been tried to the Court and has been submitted on a stipulation of facts, documentary evidence, oral testimony, and written briefs. The facts in the case are as follows:

The tract in controversy was acquired by Newell Barnum, the father of Glenn Barnum and Oneita Barnum Bradford, in 1934. At that time Newell Barnum was married to Cordelia Barger Barnum, the sister of Oscar Barger. When the land was purchased by Barnum, it was subject to a mortgage in favor of the Federal Land Bank of St. Louis to secure a debt of $500.

Between 1934 and 1937 Newell Barnum died intestate, leaving surviving him his widow and the two children who have been mentioned. It has been stipulated that at the time of Barnum's death the property in controversy was his homestead, and in those circumstances under Arkansas law title to the property passed by the law of descent and distribution to the two children as tenants in common, but subject to the widow's rights of dower and homestead. Since both children were minors at the time of their father's death, they also had a homestead interest in the property along with their mother.[2]

---

1. The 64 acre tract is located in both Van Buren and Cleburne Counties. It is described as that part of the Fractional North one-half of the Fractional Southeast one-quarter of Section 22 in Van Buren County lying east of a Government or District Fence and south of the center line of the South Fork of Little Red River; also that part of the Fractional West one-half of the Fractional North one-half of the Fractional Southwest one-quarter of Section 23 in Cleburne County, lying south of the center line of the South Fork of Little Red River; all in Township 11 North, Range 12 West of the 5th Principal Meridian.

2. The Constitution of Arkansas, Art. 9, § 6, provides: "If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her

In 1937 Mrs. Barnum married Bonnie Presley and went to live with him at his home taking the minor Barnum children with her. At the time of the re-marriage of the widow the mortgage to the Federal Land Bank was in default and there was a danger of foreclosure. Likewise, certain of the taxes on the land were delinquent. With affairs in this state the former widow and her brother, Oscar Barger, entered into negotiations looking to the purchase of the land by Barger. It was agreed that as consideration for the property Mr. Barger would assume the Federal Land Bank mortgage, would pay the delinquent taxes, and would deliver to his sister certain livestock. On November 29, 1937, Mrs. Presley executed and delivered to her brother a quitclaim deed conveying the land to him in fee simple. At the time of this conveyance the older Barnum child, Oneita, was about five years old, and the younger child, Glenn, was about three years old.[3]

The evidence is in conflict as to whether at the time of the conveyance the rights of the minor children were discussed and as to whether Barger was told that his purchase was subject to the rights of the children. The Court finds from a preponderance of the evidence that there was no discussion of the children's rights, and that when Mr. Barger acquired the property he intended to acquire the full and absolute fee simple title and that he thought he had done so.[4]

Following his purchase, Mr. Barger went into actual possession of the property and remained in possession thereof until the Government took it in 1960, claiming it as his own. He paid off the Federal Land Bank mortgage and the delinquent taxes and continued to pay current taxes on the land after he acquired it. He maintained the fences around the place, cleared about five acres of the land, sold some timber from the property, and rented the land for grazing purposes for one year.

Between 1949 and 1951 Barger constructed a four room house and a barn on the property and built some garden fences. It is stipulated that the improvements constructed on the property by Barger have enhanced its value to the extent of $1,500.

After the sale of the property to Barger, the Barnum children continued to make their home with their mother and step father. The family resided at various places in the general vicinity of the property until some years ago when Oneita Barnum married and moved west. Glenn Barnum still resides in either Cleburne or Van Buren County.

Between the time of the Barger purchase and the Government's condemnation of the land no question was raised by anyone as to Barger's ownership. The Barnum children knew that he was in possession of the property and never made any claim of ownership with respect

natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of age—each child's right to cease at twenty-one years of age—and the shares to go to the younger children, and then all to go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate." As to dower, the Arkansas statute provides in effect that where an intestate is survived by a widow and a child or children, the widow shall be endowed to the extent of one-third of the intestate's real estate for life. Ark.Stats.1947, §

that dower shall be assigned to the widow by the heirs or by the Probate Court. Ark.Stats.1947, §§ 62–701 et seq. No dower was ever assigned to Mrs. Barnum perhaps for the very good reason that in view of the small size of the Barnum holding her homestead rights were more extensive than her dower rights.

3. Oneita Barnum, who later married Bradford, is now thirty years of age, and Glenn Barnum will be twenty-eight in August of the current year.

4. Although Mr. Presley, the second husband of Mrs. Barnum testified that Barger was specifically warned that the children could recover the land from him when they became of age if they cared to do so, this testimony was not convincing. Mrs. Presley, who is still alive, did not testify.

thereto. Glenn Barnum testified at the hearing that he had always been of the opinion that his mother had a "child's part" in the property, and that he and his sister had felt that they had no interest in the property during their mother's lifetime.

When the Government condemned the land, a question was raised as to Barger's title, and he was requested by representatives of the Government to obtain disclaimers from his niece and nephew. The controversy before the Court arose when Barger tried to get a disclaimer from Glenn Barnum, which the latter refused to execute.

It is the theory of Mr. Barger that ever since 1937 he has been in the actual, open, notorious, peaceable, hostile, and adverse possession of the property, and that title thereto has become vested in him by adverse possession under the provisions of Ark.Stat.1947, § 37–101.[5] It is Barger's position that when the widow undertook to convey to him the fee simple title to the property, the children's right of action accrued and the statute commenced to run, and that his possession continued throughout their minority and for more than three years after both of them had attained the age of twenty-one years.[6]

In meeting this contention the Barnum children do not question the continuity or the quality of Barger's possession except that Glenn Barnum says Barger never told him he claimed to own the land. Nor do they deny that they had attained their respective majorities more than three years prior to the Government's acquisition of the land in 1960. They contend simply that their mother had a life estate in the property which she conveyed to their uncle, and that they had no cause of action to recover the land so long as their mother should live. Since she is still living, the children argue that the statute never commenced to run against them.

There is no question that under the law of Arkansas where the title to land is subject to a conventional life estate, the remaindermen or reversioners ordinarily have no right of possession or entry so long as the life tenant remains alive, and that generally until the death of the life tenant adverse possession does not begin to run against the remaindermen or reversioners or in favor of a grantee of the life tenant. Tennison v. Carroll, 219 Ark. 658, 243 S.W.2d 944; Bradley Lumber Co. of Arkansas v. Burbridge, 213 Ark. 165, 210 S.W.2d 284; Hamilton v. Farmer, 173 Ark. 341, 292 S.W. 683; Smith v. Maberry, 148 Ark. 216, 229 S.W. 718; LeSieur v. Spikes, 117 Ark. 366, 175 S.W. 413; Stricklin v. Moore, 98 Ark. 30, 135 S.W. 360; Ogden v. Ogden, 60 Ark. 70, 28 S.W. 796; Moore v. Childress, 58 Ark. 510, 25 S.W. 833.

The difficulty with the Barnums' position is that in Arkansas the "homestead estate" created by the Constitution is not a conventional life estate, although it is frequently called such and, indeed, for certain purposes is such. See in this connection: Jones "Arkansas Titles," § 893 including 1959 Annotated Supplement; Meadows v. Hardcastle, 219 Ark. 406, 242 S.W.2d 710; Maloney v.

---

5. This is the Arkansas "seven year statute" relating to the commencement of actions for the recovery of lands. Such actions must be commenced within seven years after they accrue, but it is provided that if such an action accrues to a minor, he or she may bring the action within three years after attaining the age of twenty-one years. It is well established that this statute is more than a mere statute of repose. The effect of its operation is to vest title affirmatively in the person who successfully invokes it. Palmer v. Sanders, Ark., 342 S.W.2d 300;

Worthen v. Rushing, 228 Ark. 445, 307 S.W.2d 890; Stricker v. Britt, 203 Ark. 197, 157 S.W.2d 18.

6. In the alternative, Barger contends that if he is not adjudged to have been the owner of the land when the Government condemned it, nevertheless he is entitled to compensation for his improvements under the Arkansas "betterment statute." Ark.Stats.1947, § 34–1423. The view which the Court takes of the case renders discussion of this alternative contention unnecessary.

McCullough, 215 Ark. 570, 221 S.W.2d 770; Killeam v. Carter, 65 Ark. 68, 44 S.W. 1032; Barnett v. Meacham, 62 Ark. 313, 35 S.W. 533. It differs from the conventional life estate in that it is purely personal to the widow and minor children of the decedent. While the widow is not required to live upon the homestead premises, and while a re-marriage by her does not deprive her of homestead rights, still, her interest being personal to her is not transferable, and a sale by her of the homestead interest or of the lands affected by the homestead estate conveys nothing to the grantee but amounts to an abandonment of the homestead by the widow, which gives the heirs a right to the immediate possession of the property. Meadows v. Hardcastle, supra; Stover v. Holman, 229 Ark. 658, 317 S.W.2d 722; Rone v. Sawrey, 197 Ark. 472, 123 S.W. 2d 524; Henry v. Dollin, 195 Ark. 607, 113 S.W.2d 97; Clark v. Friend, 174 Ark. 26, 295 S.W. 392; Brinkley v. Taylor, 111 Ark. 305, 163 S.W. 521; Barnett v. Meacham, supra.

█ Since a sale of the homestead by the widow operates as an abandonment of the homestead interest and confers a right of entry or reentry on the remaindermen or reversioners, their cause of action accrues at the time of the sale, and adverse possession begins to run in favor of the purchaser where he goes into possession claiming ownership. Meadows v. Hardcastle, Clark v. Friend, Brinkley v. Taylor, Killeam v. Carter, and Barnett v. Meacham, all supra. And the same rule applies where the widow undertakes to sell lands with respect to which no dower has been assigned to her. Clark v. Friend, supra; Fletcher v. Josephs, 105 Ark. 646, 152 S.W. 293; Griffin v. Dunn, 79 Ark. 408, 96 S.W. 190.

█ In the application of the principles above stated, it is clear that when Barnum's widow executed her deed to her brother in 1937 purporting to convey the fee, and when Barger went into possession of the property claiming it as his own, a cause of action accrued in favor of the children for possession of the property, and the statute of limitations began to run in favor of Mr. Barger. Of course, the rights of the children were not barred at the expiration of seven years from the commencement of Barger's possession because the children were not then of age, but those rights were barred at the latest by the lapse of three years following the attainment of Glenn Barnum's majority. Cf. Killeam v. Carter, supra.

An order will be entered adjudicating that Oscar Barger was the owner of the property when it was condemned by the Government, and that compensation for the taking is to be paid to him.