Dr. A. K. BUSBY *v.* James THOMPSON, et al

85-47                                    689 S.W.2d 572

Supreme Court of Arkansas
Opinion delivered May 28, 1985

*Williamson, Ball & Bird*, by: *William K. Ball*, for appellant.

*Thompson, Coe, Cousins & Irons*, by: *Robert B. Wellenberger*, for appellee Precious Ridgell.

*Ross & Ross*, by: *James A. Ross, Jr.*, for appellee Doris Adair Lisenby.

DAVID NEWBERN, Justice. This is an ejectment case which was certified to this court by the Arkansas Court of Appeals. Our jurisdiction is based on Arkansas Supreme Court and Court of Appeals Rule 29. 4. b. The circuit judge held the defendants could not be ejected because they had obtained title by adverse possession. We disagree, and we find no other basis for the claims of the defendants, so the decision of the lower court is reversed.

Bailey Lamb executed a deed in 1919 to his grandson Noah McCray to a tract of land containing approximately 126 acres. The granting clause was, ". . . unto my said grandson, Noah McCray, for and during his natural life and in remainder to the child or children of his body born unto him and living at his death, and to their heirs and assigns in fee simple forever. . . ." The habendum clause was ". . . unto said Noah McCray during his natural life and in remainder to the heirs of his body and unto their heirs and assigns in fee simple forever. . . ."

Noah McCray had two daughters, Annie Thompson and Ethel Ellis, each of whom predeceased him. Annie Thompson had three children, James Thompson, Preston Thompson and Sadie Williams. Sadie Williams and Preston Thompson, in 1969, conveyed their interest in the approximately 126 acres to Dr. Busby, the appellant, who brought this action. Dr. Busby claims an undivided two-thirds interest in the land. His theory is that the deed to Noah McCray from Bailey Lamb is to be construed as conveying to Noah for life with remainder to the heirs of his body who survived Noah. That would have made James and Preston Thompson and Sadie Williams the owners in fee simple at the death of Noah McCray in October, 1969, and thus enabled Preston and Sadie to confer a two-thirds interest on Dr. Busby by their deeds to him in November, 1969.

The flies in Dr. Busby's ointment consist of two earlier conveyances of parts of the land made by Noah McCray. The first of these was a 1922 mortgage which resulted in a 1923 foreclosure and commissioner's deed to forty of the approximately 126 acres to H. M. Wilson. Through mesne conveyances this forty acres was conveyed to appellee Doris Lisenby who was in possession of it when this suit was commenced.

The other conveyance was a deed from Noah McCray to two acres in the approximately 126-acre tract to Precious Ridgell in 1962. Precious Ridgell was in possession of the two acres at the time this suit was commenced.

One who takes a deed from a life tenant holds the land only so long as the grantor is living, or pur autre vie. *Meadows* v. *Hardcastle*, 219 Ark. 406, 242 S.W.2d 710 (1951); *Bradley Lumber Co. of Arkansas* v. *Burbridge*, 213 Ark. 165, 210 S.W.2d 284 (1948); *Georgia State Savings and Loan Ass'n.* v. *Dearing*, 128 Ark. 149, 193 S.W. 512 (1917). Thus Precious Ridgell held

the two-acre tract for the life of Noah McCray which ended October 27, 1969.

■ The same is true of Doris Lisenby. Her title was based on the mortgage executed by Noah McCray and his two daughters. The daughters were contingent remaindermen and thus could convey nothing. *National Bank of Commerce* v. *Ritter*, 181 Ark. 439, 26 S.W.2d 113 (1930); *Hurst* v. *Hilderbrandt*, 178 Ark. 337, 10 S.W.2d 491 (1928). Noah McCray had only a life estate. Thus Doris Lisenby's interest terminated with Noah McCray's life, October 27, 1969.

Doris Lisenby has raised two points in a paragraph of her brief labeled "cross-appeal." First, findings of the trial court contained a typographical error showing the land conveyed to the immediate predecessor to her purported title was in Section 7, Township 10 when it should have read Section 10, Township 12. In view of our holding, this point becomes moot.

The other point is an asserted ground for affirmance, i.e., that when the mortgage of the forty acres Doris Lisenby possesses was foreclosed in 1923, the court entered an in rem decree in favor of H. M. Wilson which is not now subject to collateral attack.

■ The foreclosure decree recited that H. M. Wilson held a first mortgage lien on the 40 acres superior to the title of the life tenant, Noah McCray, and his then living daughters Annie and Ethel, and that H. M. Wilson was entitled to $201.93 ". . . from said . . . land . . ." and unless it was paid the land would be sold to satisfy the debt. This decree did not reach an "in rem" conclusion that H. M. Wilson owned the forty acres in question, and it was unlike the action in the case Doris Lisenby cites on this point, *Crittenden Lumber Co.* v. *McDougal*, 101 Ark. 390, 142 S.W. 836 (1911). That was an action pursuant to a statute which specifically declared it to be an in rem proceeding. Nor does Dr. Busby challenge this decree, collaterally or otherwise. He questions, rather, the effect of the commissioner's deed to H. M. Wilson, given the lack of title in Noah McCray, the mortgagor, beyond his life estate.

■ Doris Lisenby also points out that Bailey Lamb had mortgaged this same forty acres to John Lamb who was also Noah McCray's mortgagee and who had assigned his interest to H. M. Wilson. Doris Lisenby argues that the mortgage from

Bailey Lamb merged with that from Noah McCray, and thus the decree was a foreclosure of both mortgages. Presumably this would have the effect of conveying Bailey Lamb's reversionary interest to H. M. Wilson. No authority is cited for this merger proposition, and we are not convinced by the argument. The foreclosure decree speaks only of foreclosing against the interest of Noah McCray and his two daughters. That was, in effect, no more than Noah McCray's life estate. A life tenant can mortgage no more than the tenancy for life. *Georgia State Savings Association* v. *Dearing*, 128 Ark. 149, 193 S.W. 512 (1917). *See also Holloway* v. *Bank of Atkins*, 205 Ark. 598, 169 S.W.2d 868 (1943).

■ The trial court held Precious Ridgell and Doris Lisenby had title by adverse possession. If James Thompson, Preston Thompson, and Sadie Williams are remaindermen, then the adverse possession began to run against them and as to their respective interests as of October 27, 1969. Possession of one claiming under a life tenant cannot become adverse against the remainderman until the death of the life tenant. *Fletcher* v. *Hurdle*, 259 Ark. 640, 536 S.W.2d 109 (1976); *Luster* v. *Arnold*, 249 Ark. 152, 458 S.W.2d 414 (1970); *Wilson* v. *McDaniel*, 247 Ark. 1036, 449 S.W.2d 944 (1970). If Noah McCray's grandchildren were not remaindermen, then the trial court was correct, and Dr. Busby's claim to the tracts possessed by Doris Lisenby and Precious Ridgell fails.

The question then comes down to the effect of the 1919 deed from Bailey Lamb to Noah McCray. If it is construed as a grant to Noah for life with remainder to the heirs of his body surviving at Noah's death, then James Thompson, Preston Thompson and Sadie Williams were contingent remaindermen whose interests vested prior to the conveyances of Preston and Sadie to Dr. Busby. If, on the other hand, it is construed as being limited to Noah for life and remainder to Noah's children, as opposed to bodily heirs, then the contingent remainder in Noah's children was destroyed when they died, predeceasing Noah.

The appellees contend that the time the conveyance from Bailey Lamb to Noah McCray was made, 1919, the law of this state was that if the granting clause were in conflict with the habendum, the habendum would be disregarded. *Sutton* v. *Sutton*, 141 Ark. 93, 216 S.W. 1052 (1919); *Jackson* v. *Lady*,

140 Ark. 512, 216 S.W. 505 (1919). *Cf. Georgia State Savings Association* v. *Dearing, supra.* To find a conflict we would have to say the language ". . . to the child or children born unto him . . ." differs irreconcilably from ". . . to the heirs of his body. . . ." We are unwilling to say that, had this case arisen in 1919, the result would necessarily have favored the appellees. If a will or a deed shows it was the intention of the testator or grantor to use the words "child or children" to mean words of limitation like "heirs of his body," we have held that is what was meant. See *Wilkins* v. *Wilkins*, 212 Ark. 242, 206 S.W.2d 126 (1947); *Kelly* v. *Kelly*, 176 Ark. 548, 3 S.W.2d 305 (1928).

■ Certainly under the law as it is today we can look to the habendum as an explanation of ambiguity in the granting clause. *Fender* v. *Rogers*, 185 Ark. 191, 46 S.W.2d 804 (1932). The habendum may be considered in determining the intent of the grantor from examination of the entire deed. *Gipson* v. *Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974); *Wilkins* v. *Wilkins*, 212 Ark. 242, 206 S.W.2d 126 (1947).

We agree with appellee Lisenby that Bailey Lamb probably had no knowledge whatever of what was in the granting clause as opposed to the habendum in his deed to his grandson. He was "old and unlettered." He signed his name by mark. But when we look to the circumstances recited in his deed it becomes pretty clear he did not intend to have a stronger reversionary interest than would have been the case if the words of his deed were construed to cause the title to go to the heirs of the body of his grandson. The first paragraph of the deed was as follows:

> That I, Bailey Lamb, an unmarried old man, for and in consideration and upon the express condition, and subject to said conditions, that my grandson Noah Mc-Cray, shall support me during the remainder of my life, furnishing me with a comfortable and suitable home, on the below described land and with suitable and comfortable clothing, medicines, medical attention and good and wholesome food and all other necessities of an old colored man of my age, during my life, and at my death shall have my body decently and suitably buried in an appropriate burial place, with stone to mark my grave, I hereby grant, bargain, sell and convey unto my said grandson, Noah McCray, for and during his natural life and in remainder

to the child or children of his body born unto him and living at his death, and unto their heirs and assigns in fee simple forever, the following described 125.83 acres of land in Drew County, Arkansas, to-wit: [then followed the legal description].

By the fifth paragraph he gave Noah McCray all his personal property ". . . to be by him used in the cultivation of the said land and in my maintenance and support."

We hold Bailey Lamb's language showed he intended his grandson's bodily heirs, whether children or grandchildren, who survived Noah McCray, to be the takers of the land. Therefore, the adverse possession claims of Doris Lisenby and Precious Ridgell did not begin to run against the remaindermen, James Thompson, Preston Thompson and Sadie Williams until October 27, 1969. This suit was brought before the seven year period ended. Thus Dr. Busby has shown a title superior to those of the appellees and should prevail in his ejectment action.

Reversed and remanded for entry of an order not inconsistent with this opinion.